**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 26, 2007

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 128161

RAYMOND A. MCCULLER,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

This is one of three companion cases involving the application of *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), to Michigan's sentencing scheme. See also *People v Harper*, 479 Mich ___; ___ NW2d ___ (2007) (Docket Nos. 130988 and 131898, decided July 25, 2007). This case returns to us following a remand from the United States Supreme Court. In our previous opinion, we held that a sentencing court must score both the offense variables (OVs) and the prior record variables (PRVs) to arrive at a defendant's minimum sentence range. We reasoned that a sentencing court does not violate

*Blakely* principles when it engages in judicial fact-finding to score the OVs in order to calculate a defendant's recommended minimum sentence range under the sentencing guidelines, even if the defendant's PRV score alone would place him in an "intermediate sanction cell."[1] *People v McCuller*, 475 Mich 176; 715 NW2d 798 (2006) (*McCuller I*). The Supreme Court subsequently vacated our judgment and remanded the case to us for further consideration in light of *Cunningham v California*, 549 US ___; 127 S Ct 856; 166 L Ed 2d 856 (2007). *McCuller v Michigan*, ___ US ___; 127 S Ct 1247 (2007) (*McCuller II*). Having now considered *Cunningham*, we reaffirm our original decision for three reasons.[2]

First, *Cunningham* does not alter our view that Michigan's statutory scheme requires the sentencing court to score both the OVs and the PRVs before determining the defendant's minimum sentence. A defendant's qualification for an intermediate sanction is contingent on the sentencing court's calculation and application of these sentencing variables. A sentencing court's fact-finding in

---

[1] A defendant falling within an intermediate sanction cell must be sentenced, absent a substantial and compelling reason for departure, to an intermediate sanction that does not include a prison term. MCL 769.34(4)(a).

[2] In reaffirming our original decision, we do not, as Justice Kelly's dissent contends, imply that the Supreme Court "simply did not understand Michigan's sentencing laws." *Post* at 2. Justice Kelly seems to read something into the Supreme Court's order that is simply not there. Justice Kelly is incorrect that the Supreme Court indicated in its order that "there is a Sixth Amendment problem with Michigan's sentencing guidelines." *Post* at 60. We take the Supreme Court's order for exactly what it is: a remand for us to consider the matter further in light of the Court's holding in *Cunningham*. The order does not direct us to decide the case differently from our previous decision.

2

scoring the OVs does not increase the defendant's statutory maximum under *Blakely*.[3] Here, the proper scoring of both the OVs and the PRVs did not place defendant in an intermediate sanction cell. Instead, defendant's scores placed him in a "straddle cell" with a maximum sentence of 15 years in prison. Defendant was sentenced within this statutory maximum.

Second, as we explained in *Harper, supra* at ___, Michigan, unlike California, has a true indeterminate sentencing scheme. A sentencing court scores the OVs only to calculate the recommended range for the *minimum* portion of the defendant's sentence, not to arrive at the defendant's maximum sentence, which is set by statute. The conditional limit on incarceration contained in MCL 769.34(4)(a)—an intermediate sanction—does not establish the defendant's statutorily required maximum sentence authorized by the jury's verdict or the guilty plea, but is instead a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period that is *less* than that authorized by the jury's verdict or the guilty plea. *Harper, supra* at ___. Therefore, even if defendant were to be sentenced on the basis of his PRV score alone, the sentencing court would not violate *Blakely* by sentencing him to the statutory maximum of 15 years in prison.

---

[3] The Court of Appeals reached the same conclusion in *People v Uphaus*, ___ Mich App ___, ___; ___ NW2d ___ (2007) (Docket No. 267238, issued April 3, 2007), slip op at 5-6.

3

Third, even if the sentencing court violated *Blakely* by sentencing defendant to a term of imprisonment based on its scoring of the OVs, the error was harmless under the plain error standard of *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The factors underlying the scoring of the OVs were uncontested and supported by overwhelming evidence. We are firmly convinced that a jury would have reached precisely the same result.

## I. FACTS AND PROCEDURAL HISTORY

Defendant apparently harbored some resentment toward the victim, Larry Smith, because a woman who once lived with defendant had left him for Smith. Smith and the woman were imbibing at a local bar when Smith was told that a man outside in the parking lot was harassing Smith's dog. When Smith went outside, he heard someone behind him. He turned and saw defendant swinging a blunt object that looked like a bat, a pipe, or a club at his head. The next thing Smith remembered was regaining consciousness in the hospital. As a result of defendant's assault on Smith, he suffered a concussion, broken nose, broken cheek bone, broken eye socket, fractured skull, and collapsed right inner ear wall. He also lost teeth on the right side of his lower jawbone.

A jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84, which has a maximum penalty of 10 years in prison. Because defendant was a second-offense habitual offender, however, the sentencing court had the discretion to enhance defendant's statutory maximum

sentence to 15 years. MCL 769.10(1)(a).[4] In determining defendant's minimum sentence range, the sentencing court scored 10 points for OV 1 because the victim had been "touched by any other type of weapon," MCL 777.31(1)(c) (now MCL 777.31[1][d]); 1 point for OV 2 because defendant "possessed or used any other potentially lethal weapon," MCL 777.32(1)(d) (now MCL 777.32[1][e]); and 25 points for OV 3 because a "[l]ife threatening or permanent incapacitating injury occurred to a victim," MCL 777.33(1)(c). Defendant's total PRV score was 2 points because he had one prior misdemeanor conviction. These scores placed defendant in the B-IV cell for a class D offense. As a second-offense habitual offender, defendant's calculated minimum sentence range was 5 to 28 months,

---

[4] MCL 769.10(1)(a) provides that a sentencing court may impose a sentence that is 1½ times longer than the maximum sentence on a second-offense habitual offender:

> (1) If a person has been convicted of a felony or an attempt to commit a felony, whether the conviction occurred in this state or would have been for a felony or attempt to commit a felony in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court, except as otherwise provided in this section or section 1 of chapter XI, may place the person on probation or sentence the person to imprisonment for a maximum term that is not more than 1-1/2 times the longest term prescribed for a first conviction of that offense or for a lesser term.

which is in a straddle cell.[5] Because the scoring of the OVs and the PRVs placed defendant in a straddle cell, the sentencing court had the option of sentencing defendant to either an intermediate sanction or a prison term with a minimum sentence within the guidelines range. MCL 769.34(4)(c). The court chose to sentence defendant within the guidelines range to a 2- to 15-year term of imprisonment.

On appeal, defendant contended that he was entitled to resentencing under *Blakely* because the jury had not found beyond a reasonable doubt the facts underlying the sentencing court's scoring of the OVs. Defendant argued that absent the sentencing court's scoring of the OVs, his minimum sentence range would have been zero to 11 months, which would have placed him in an intermediate sanction cell, entitling him to an intermediate sanction as a maximum sentence. The Court of Appeals affirmed defendant's conviction and sentence, rejecting defendant's argument because *Blakely* does not apply to Michigan's indeterminate sentencing system.

---

[5] A defendant falls within a straddle cell when, after the sentencing variables have been scored, the upper limit of the recommended minimum sentence exceeds 18 months, but the lower limit of the recommended minimum sentence is 12 months or less. MCL 769.34(4)(c).

This Court also affirmed defendant's sentence.[6]  We held that the sentencing court had not violated *Blakely* by engaging in judicial fact-finding to score the OVs necessary to calculate the recommended minimum sentence range. We explained that a defendant cannot be sentenced to an intermediate sanction by scoring the PRVs only—the OVs must also be scored.  Thus, defendant was not entitled to resentencing, because his maximum sentence was the statutory maximum of 15 years, which the sentencing court had not exceeded.  *McCuller I, supra* at 181-183.

The Supreme Court thereafter vacated our judgment and remanded this case to this Court "for further consideration in light of *Cunningham v California*, 549 U.S. ___; 127 S.Ct. 856; 166 L.Ed.2d 856 (2007)."  *McCuller II, supra*, 127 S Ct at 1247.

## II.  STANDARD OF REVIEW

This case involves questions of statutory interpretation and constitutional questions, which are both reviewed de novo.  *People v Stewart*, 472 Mich 624, 631; 698 NW2d 340 (2005); *People v Drohan*, 475 Mich 140, 146; 715 NW2d

---

[6] On appeal, defendant raised issues other than the *Blakely* issue, but this Court denied defendant's application for leave to appeal with respect to those issues. *McCuller I, supra* at 183.

7

778 (2006). An unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights. *Carines, supra* at 763-764.[7]

## III. ANALYSIS

## A. BACKGROUND

In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the Supreme Court held that under the Sixth and Fourteenth Amendments of the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely, supra* at 303, the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis deleted.) In regard to indeterminate sentencing schemes, the *Blakely* Court stated:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [*Id.* at 309 (emphasis in original).]

---

[7] Defendant agrees that his claim of constitutional error should be reviewed under the plain error standard.

Thus, a sentencing court in an indeterminate sentencing scheme does not violate *Blakely* by engaging in fact-finding to determine the minimum term of a defendant's indeterminate sentence unless the fact-finding increases the statutory maximum sentence to which the defendant had a legal right.[8]

> The constitutional rule of *Apprendi, Blakely,* and [*United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005)] can be summarized as follows: (1) a trial court may not impose a sentence greater than the statutory maximum unless it does so on the basis of a prior conviction or the fact at issue is "admitted by the defendant or proved to a jury beyond a reasonable doubt"; (2) where a defendant's maximum sentence is calculated through the use of mandatory sentencing guidelines, the statutory maximum is the maximum sentence that may be imposed under those guidelines, based solely on the defendant's prior convictions and those facts proven beyond a reasonable doubt; and (3) a trial court *may* consider facts and circumstances not proven beyond a reasonable doubt in imposing a sentence within the statutory range. [*Drohan, supra* at 156 (citations omitted).]

---

[8] In *Harris v United States*, 536 US 545, 566; 122 S Ct 2406; 153 L Ed 2d 524 (2002), Justice Kennedy stated:

> The Fifth and Sixth Amendments ensure that the defendant "will never get *more* punishment than he bargained for when he did the crime," but they do not promise that he will receive "anything less" than that. *Apprendi*, *supra*, 530 US at 498 (Scalia, J., concurring). If the grand jury has alleged, and the trial jury has found, all the facts necessary to impose the maximum, the barriers between government and defendant fall. The judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury—even if those facts are specified by the legislature, and even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.

In *Drohan, supra* at 160-161, this Court explained that Michigan has an indeterminate sentencing scheme.[9]  "The maximum sentence is not determined by the trial court, but rather is set by law."  *Id.* at 161.  Michigan's sentencing guidelines create a range within which the sentencing court must set the *minimum* sentence, but the sentencing court may not impose a sentence greater than the statutory maximum.  *Id.*  "Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict."  *Id.* at 162.  Therefore, Michigan's indeterminate sentencing scheme is valid under *Blakely. Drohan, supra* at 162-164; *Harper, supra* at ___.

### B. SCORING THE OVS TO DETERMINE THE MINIMUM SENTENCE

### 1. DISCUSSION

Despite our *Drohan* decision, defendant argues that one aspect of Michigan's indeterminate sentencing scheme nonetheless violates the Sixth Amendment of the United States Constitution.  Defendant claims that because his

---

[9] The very limited number of offenses that require determinate sentences includes first-degree murder, MCL 750.316 (life in prison without the possibility of parole), and carrying or possessing a firearm when committing or attempting to commit a felony, MCL 750.227b (two years in prison for the first conviction, five years for the second conviction, and ten years for a third or subsequent conviction).  *Drohan, supra* at 161 n 12.  When a defendant is sentenced for one of these crimes, the guidelines are not scored to determine the defendant's minimum sentence.  The Legislature has singled out these crimes as rare instances in which the sentencing court retains no discretion in sentencing.

PRV score alone placed him in an intermediate sanction cell, he was entitled to a maximum sentence that did not include prison time. Defendant contends that the sentencing court violated *Blakely* by engaging in judicial fact-finding to score the OVs, thereby allegedly increasing his maximum sentence from an intermediate sanction to a term of imprisonment. We again reject defendant's argument and affirm defendant's sentence.

Generally, when a defendant is sentenced in Michigan, "[t]he maximum penalty provided by law shall be the maximum sentence . . . ." MCL 769.8(1). Our sentencing guidelines set a range only for a defendant's minimum sentence. MCL 769.34(2). The sentencing court determines a defendant's minimum sentence range by considering together the OVs, the PRVs, and the offense class. MCL 777.21(1).[10] Generally, once the sentencing court calculates the defendant's

---

[10] MCL 777.21(1) provides:

Except as otherwise provided in this section, for an offense enumerated in part 2 of this chapter, determine the recommended minimum sentence range as follows:

(a) Find the offense category for the offense from part 2 of this chapter. From section 22 of this chapter, determine the offense variables to be scored for that offense category and score only those offense variables for the offender as provided in part 4 of this chapter. Total those points to determine the offender's offense variable level.

(b) Score all prior record variables for the offender as provided in part 5 of this chapter. Total those points to determine the offender's prior record variable level.

(continued…)

11

guidelines range, it must, absent substantial and compelling reasons, impose a minimum sentence within that range. MCL 769.34(2). There are, however, exceptions to this rule. One exception pertains when the upper limit of the recommended minimum sentence range is 18 months or less. In such cases, the court, unless it articulates substantial and compelling reasons, must impose an intermediate sanction:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [MCL 769.34(4)(a).]

MCL 769.31(b) defines "intermediate sanction" as "probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed. Intermediate sanction includes, but is not limited to, 1 or more of" several options, including up to one year in jail, probation with any conditions

---

(…continued)

> (c) Find the offense class for the offense from part 2 of this chapter. Using the sentencing grid for that offense class in part 6 of this chapter, determine the recommended minimum sentence range from the intersection of the offender's offense variable level and prior record variable level. The recommended minimum sentence within a sentencing grid is shown as a range of months or life.

authorized by law, probation with jail, and other options such as house arrest and community service.[11]

We hold that *Cunningham* does not require us to modify our previous decision. A sentencing court does not violate *Blakely* by engaging in judicial fact-

---

[11] The nonexhaustive list of intermediate sanction options includes:

(*i*) Inpatient or outpatient drug treatment or participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1082.

(*ii*) Probation with any probation conditions required or authorized by law.

(*iii*) Residential probation.

(*iv*) Probation with jail.

(*v*) Probation with special alternative incarceration.

(*vi*) Mental health treatment.

(*vii*) Mental health or substance abuse counseling.

(*viii*) Jail.

(*ix*) Jail with work or school release.

(*x*) Jail, with or without authorization for day parole under 1962 PA 60, MCL 801.251 to 801.258.

(*xi*) Participation in a community corrections program.

(*xii*) Community service.

(*xiii*) Payment of a fine.

(*xiv*) House arrest.

(*xv*) Electronic monitoring. [MCL 769.31(b).]

13

finding to score the OVs to calculate a defendant's recommended minimum sentence range, even when the defendant's PRV score alone would have placed him in an intermediate sanction cell. *Cunningham* involved the Supreme Court's examination of California's determinate sentencing law (DSL). In *Harper*, we described the facts and holding in *Cunningham*:

> In *Cunningham,* the defendant was tried and convicted of continuous sexual abuse of a child under the age of 14. The statute defining the offense prescribed three precise terms of imprisonment—lower, middle, and upper term sentences of 6, 12, and 16 years, respectively. The statute that controlled which term a sentencing judge should impose provided that "'the court *shall* order imposition of the middle term, *unless* there are circumstances in aggravation or mitigation of the crime.'" Circumstances in aggravation or mitigation were to be determined by the court after considering the trial record, the probation officer's report, statements submitted by the parties, the victim, or the victim's family, and "any further evidence introduced at the sentencing hearing." The judge in *Cunningham* sentenced the defendant to the 16-year upper term, on the basis of the judge's findings of aggravating facts including the particular vulnerability of the victim and the defendant's violent conduct, which indicated a serious danger to the community.

> The *Cunningham* Court concluded that the sentence violated the defendant's rights because

> "an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. . . . An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. . . . Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely*, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. 542 U.S., at 303, 124 S.Ct. 2531 ('[T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.' (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a

preponderance of the evidence, not beyond a reasonable doubt, . . . the DSL violates *Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S., at 490, 120 S.Ct. 2348." [*Harper, supra* at ___, quoting *Cunningham, supra*, 127 S Ct at 868.]

The Supreme Court reiterated its holding from *Blakely* that "'[t]he relevant "statutory maximum,"' . . . 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.'" *Cunningham, supra*, 127 S Ct at 860, quoting *Blakely, supra* at 303-304. After holding that California's DSL violated *Blakely*, the Court advised California that "[o]ther states have chosen to permit judges genuinely 'to exercise broad discretion . . . within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal." *Cunningham, supra*, 127 S Ct at 871, quoting *Booker, supra* at 233. The *Cunningham* decision did not modify *Blakely*.

Although California's DSL contains some language facially similar to MCL 769.34(4)(a), further examination of the two sentencing schemes reveals clear differences. Under California's DSL, the defendant was legally *entitled* to a maximum sentence of 12 years in prison. The DSL did not attach any conditions to the defendant's entitlement to the 12-year maximum sentence. The DSL violated *Blakely* by allowing the sentencing court to exceed that 12-year maximum sentence on the basis of facts not submitted to the jury and found beyond a reasonable doubt.

15

By contrast, Michigan's sentencing scheme does not entitle defendant to a maximum sentence of an intermediate sanction in the same way that the defendant in *Cunningham* was entitled to a 12-year maximum sentence. In Michigan, a defendant does not even qualify for an intermediate sanction until after the OVs are scored. MCL 769.34(4)(a) plainly prescribes that a defendant qualifies for an intermediate sanction only "[i]f the upper limit of the recommended *minimum* sentence range for a defendant *determined under the sentencing guidelines* . . . is 18 months or less . . . ." (Emphasis added.) To determine a defendant's minimum sentence range under the guidelines, the sentencing court must first score the OVs and the PRVs and consider the offense class. MCL 777.21. Thus, under MCL 769.34(4)(a), a defendant does not even qualify for an intermediate sanction until after the court has scored all the sentencing variables, including the OVs, and those variables indicate that the upper limit of the defendant's *minimum* sentence range is 18 months or less. In other words, a defendant's qualification for an intermediate sanction is contingent on the sentencing court's calculation of all of the defendant's sentencing variables. A defendant has no legal right to have his minimum sentence calculated using only a portion of the statutorily enumerated factors.[12]

_____

[12] Further, a defendant in Michigan cannot expect to fall into an intermediate sanction cell at the time he commits the offense because the defendant can never be certain how the OVs will be scored. Indeed, an offender may not even be aware of some facts attending the crime until he is brought before

(continued…)

Upon conviction, a defendant is legally entitled only to the statutory maximum sentence for the crime involved. A defendant has no legal right to expect any lesser *maximum* sentence. As the *Blakely* Court stated, whether a defendant has a legal right to a lesser sentence "makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Blakely, supra* at 309. Thus, a sentencing court does not violate *Blakely* principles by engaging in judicial fact-finding to score the OVs to calculate the recommended *minimum* sentence range, even when the scoring of the OVs places the defendant in a straddle cell or a cell requiring a prison term instead of an intermediate sanction cell. The sentencing court's factual findings do not elevate the defendant's maximum sentence, but merely determine the defendant's recommended minimum sentence range, which may consequently qualify the defendant for an intermediate sanction.

In this case, the properly scored guidelines gave defendant a recommended minimum sentence range of 5 to 28 months in prison. This placed defendant in a straddle cell, for which the sentencing court had the discretion to impose a minimum sentence of either a prison term with a minimum term within the

---

(…continued)

a court. To provide just two examples, a defendant may not know the extent of injury he ultimately caused a victim for purposes of OV 3, MCL 777.33, or the full value of property he has stolen for purposes of OV 16, MCL 777.46.

17

guidelines range or an intermediate sanction. MCL 769.34(4)(c).[13] Defendant also faced a statutory maximum sentence of 15 years in prison for his conviction of assault with intent to do great bodily harm less than murder as a second-offense habitual offender, MCL 750.84; see MCL 769.10. Even if Michigan's intermediate sanction cells are characterized as setting maximum sentences for *Blakely* purposes, defendant never gained a legal right to an intermediate sanction. Therefore, the sentencing court did not violate *Blakely* by scoring the OVs and imposing a prison sentence within the guidelines, rather than imposing an intermediate sanction based on defendant's PRV scores alone. Accordingly, we affirm defendant's sentence.

## 2. RESPONSE TO JUSTICE KELLY'S DISSENT[14]

In concluding that the trial court's scoring of the OVs violated defendant's Sixth Amendment right to a trial by jury, Justice Kelly's dissent ignores the

---

[13] MCL 769.34(4)(c) provides:

> If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> (*i*) To imprisonment with a minimum term within that range.
>
> (*ii*) To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

[14] Justice Kelly's dissent discusses issues we address in detail in *Harper*. *Post* at 32-53. Our response to her arguments regarding these issues can be found in the *Harper* opinion.

statutory language and relies on the faulty premise that defendant's jury verdict entitled him to an intermediate sanction. Justice Kelly repeatedly recites "*Apprendi*'*s* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham, supra*, 127 S Ct at 868, quoting *Apprendi, supra* at 490 (emphasis added). Yet Justice Kelly woefully misapplies this rule by interpreting it as follows:

> Hence, a defendant is entitled to a sentence based solely on (1) the defendant's prior convictions and (2) any facts that he or she admitted and any facts that were specifically found by the jury.

> This requires a conclusion that, in order to determine a defendant's appropriate maximum sentence, a sentencing court should score only the PRVs. [*Post* at 26.]

This interpretation disregards the integral part of the *Apprendi* rule that only facts used to increase a sentence *beyond the statutory maximum* need be proved beyond a reasonable doubt.

Justice Kelly's position demonstrates a fundamental misunderstanding of the function of the legislative sentencing guidelines and how intermediate sanctions work within the overall sentencing scheme. Once the jury convicted defendant of assault with intent to do great bodily harm less than murder and of being a second-offense habitual offender, the jury's verdict authorized a maximum prison sentence of 15 years. At that point, the sentencing court, relying on judicially found facts, had to score the various PRVs and OVs to determine the recommended range for the minimum portion of defendant's sentence. A

19

defendant is only eligible for an intermediate sanction if, on the basis of those additional findings of fact, "the upper limit of the recommended minimum sentence range for a defendant *determined under the sentencing guidelines* set forth in chapter XVII is 18 months or less . . . ." MCL 769.34(4)(a) (emphasis added). In other words, whether a defendant is eligible for an intermediate sanction is wholly determined by additional findings of fact undertaken by the sentencing court in scoring the guidelines, including the OVs. Moreover, a defendant's entitlement to an intermediate sanction is itself conditioned on the absence of *other* judicially found facts, i.e., facts that demonstrate a "substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections." MCL 769.34(4)(a); see *Harper, supra* at ___. Therefore, under *Cunningham*, an intermediate sanction does not constitute the equivalent of the 12-year presumptive maximum sentence set forth in California's DSL, but operates instead in a manner similar to the 6-year lower term that a California court may impose on the basis of its finding of certain mitigating facts at sentencing. A court's use of judicially found facts to determine whether to impose a 6-year term or a 12-year term under California's DSL does not run afoul of *Blakely* because the court remains limited to imposing the maximum sentence authorized by the jury's verdict. Likewise, the use of judicially found facts to score the OVs in order to determine whether a defendant is eligible for an intermediate sanction does not run afoul of *Blakely* because a Michigan trial court

20

may never exceed the maximum sentence authorized by the jury's verdict, i.e., the statutory maximum. See *Harper, supra* at ___. Justice Kelly studiously ignores the plain language of MCL 769.34(4)(a) and does not even attempt to explain why the statute entitles a defendant to an intermediate sanction as a maximum sentence before the OVs are scored. Under the plain statutory language, a defendant clearly is not eligible for an intermediate sanction until the recommended minimum sentence range under the sentencing guidelines has been determined by considering all the appropriate factors, including the OVs. Before that, a defendant can only expect the maximum sentence set by statute.[15] Thus, although Justice Kelly correctly asserts that a defendant is entitled to a statutory maximum sentence on the basis of the jury's verdict, the maximum sentence authorized by the jury's verdict in this case is 15 years.

---

[15] Justice Kelly compares the instant case to *Ring v Arizona*, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002), in which the United States Supreme Court rejected an Arizona sentencing law allowing a sentencing judge to conduct a posttrial hearing to determine whether aggravating circumstances existed to allow imposition of the death penalty, as opposed to life imprisonment. The instant case is distinguishable from *Ring*, however, for the reasons we have discussed—the jury's verdict alone never qualified defendant for an intermediate sanction, because an offender's qualification for an intermediate sanction is contingent on the scoring of the OVs. In *Ring*, on the other hand, the maximum sentence allowed by the jury's verdict—life imprisonment—was not subject to such contingencies. *Id.* at 597. Further, as we discussed in *Harper, supra* at ___ n 25, Michigan's indeterminate sentencing scheme imposes only one maximum sentence—the maximum sentence set forth in the statute applicable to the crime.

## C. MICHIGAN'S INTERMEDIATE SANCTION CELLS

Even if defendant may qualify for an intermediate sanction before the OVs are scored, we nonetheless conclude that the sentencing court did not violate *Blakely* by sentencing him to a term of imprisonment. If the sentencing court had not scored the OVs and defendant had fallen into an intermediate sanction cell, he would still not have been entitled to an intermediate sanction as a statutory maximum sentence. As we held in *Harper, supra* at ___:

> Under Michigan law, the *maximum* portion of a defendant's indeterminate sentence is prescribed by MCL 769.8, which requires a sentencing judge to impose no less than the prescribed statutory maximum sentence as the maximum sentence for every felony conviction.[16] Michigan's unique law requiring the imposition of an intermediate sanction upon fulfillment of the conditions of MCL 769.34(4)(a) does not alter the maximum sentence that is required upon conviction and authorized by either the jury's verdict or the guilty plea. Rather, the conditional limit on incarceration contained in MCL 769.34(4)(a) is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period of time that is *less* than that authorized by the jury's verdict or guilty plea, a circumstance that does not implicate *Blakely*. [Emphasis in original.]

Thus, even if defendant fell into an intermediate sanction cell, his statutory maximum sentence would remain 15 years. The sentencing court did not violate *Blakely* by engaging in judicial fact-finding to score the OVs and impose a sentence within that statutory range.

## D. HARMLESS ERROR

Finally, even if the sentencing court violated *Blakely* by scoring the OVs and sentencing defendant on the basis of those OV scores, the error was harmless. As we explained in *Harper, supra* at ___, *Blakely* errors are not structural, but are subject to harmless error analysis. See also *Washington v Recuenco*, ___ US ___; 126 S Ct 2546, 2551; 165 L Ed 2d 466 (2006).[17] Here, defendant did not raise any constitutional challenge during sentencing. Therefore, defendant must show plain error affecting substantial rights. *Carines, supra* at 763-764; see also *United States v Trujillo-Terrazas*, 405 F3d 814, 817-818 (CA 10, 2005) (applying the same plain error standard to an unpreserved claim of a *Blakely* violation). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error '"seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."'" *Carines, supra* at 763, quoting *United States v Olano*, 507 US 725, 736; 113 S Ct 1770; 123 L Ed 2d 508 (1993). The important factor in this *Blakely* harmless error analysis is whether the facts supporting the sentencing court's OV scores were

_____

(…continued)
[16] As we explained in *Harper, supra* at ___ n 21, the habitual-offender statutes are an exception to this rule.

[17] For the reasons we explained in *Harper, supra* at ___ n 70, Justice Kelly's interpretation of *Recuenco* would improperly render *Blakely* errors harmful per se. In short, any conclusion that the unavailability of a particular procedure in the trial court renders all errors harmful would run directly counter to the crux of the harmless error analysis that forms the basis of the United States Supreme Court's holding in *Recuenco*. See *id*.

23

"'uncontested and supported by overwhelming evidence.'" *Harper, supra* at ___, quoting *Neder v United States*, 527 US 1, 17; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

At sentencing, the court scored 10 points for OV 1 because the victim was touched by a weapon other than a firearm or a cutting or stabbing weapon and 1 point for OV 2 because defendant possessed a potentially lethal weapon other than a cutting or stabbing weapon, a firearm, or an incendiary or explosive device. Defendant has not shown that any error in the sentencing court's scoring of these OVs affected the outcome of the proceedings. *Carines, supra* at 763. The jury found that defendant assaulted the victim with the intent to do great bodily harm less than murder, and, although the elements of that crime do not include the touching of a victim with a potentially lethal weapon, those facts were uncontested and supported by overwhelming evidence at trial. In regard to OV 1, the uncontroverted evidence showed that the victim was struck in the head with a bat, pipe, or club.[18] The type and severity of the victim's injuries corroborated the testimony that such a bludgeoning weapon was used. Defendant did not challenge

---

[18] Justice Kelly's dissent mischaracterizes the testimony by arguing that defendant's use of a weapon was contested by Gregory Thompson, a prosecution witness. First, Thompson did not witness the assault, but was merely told about it by defendant. Second, and more importantly, contrary to Justice Kelly's representation, Thompson did *not* testify that defendant did not use a weapon in beating Smith. Rather, Thompson actually testified during cross-examination that *he assumed that defendant was armed* because of the gestures defendant made while describing the beating.

the testimony that he was armed or the evidence regarding the type of weapon used in the assault. Rather, he claimed that he was misidentified as the perpetrator. Thus, the uncontroverted and overwhelming evidence showed beyond a reasonable doubt that the victim was touched by a weapon. In regard to OV 2, the uncontested and overwhelming evidence regarding the magnitude of the victim's injuries demonstrated that the weapon used to injure him was potentially lethal. The jury rejected defendant's claim of mistaken identity and convicted defendant as the perpetrator who inflicted the injuries. Therefore, the sentencing court's decision to score OVs 1 and 2 on the basis of its findings that defendant possessed a potentially lethal weapon and touched the victim with that weapon, if error at all, was harmless.

The sentencing court also scored 25 points for OV 3 because the victim suffered life threatening or permanent incapacitating injury. The uncontroverted evidence at trial showed that the victim was struck so violently that he immediately lost consciousness. He suffered a concussion, broken nose, broken cheek bone, broken eye socket, fractured skull, and collapsed right inner ear wall. He also lost teeth on the right side of his lower jawbone. The severity of these injuries required a ten-day hospital stay. Because the sentencing court's finding that the victim suffered a life threatening injury was based on uncontested factors

and was supported by overwhelming evidence, any error in sentencing based on defendant's OV 3 score was harmless.[19]

If the jury had been asked to score the OVs, it unquestionably would have reached the same result as the sentencing court. Like the defendants in *Harper, supra* at ___, and *Neder, supra* at 15, defendant does not suggest that he would offer contrary evidence if given the opportunity to do so. Accordingly, even if the court violated *Blakely* at sentencing, defendant would not be entitled to resentencing because he has not shown that that the error ""seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."" *Carines, supra* at 763, quoting *Olano, supra* at 736.

## IV. CONCLUSION

The sentencing court did not violate *Blakely* when it engaged in judicial fact-finding to score the OVs and then determined defendant's minimum sentence on the basis of those scores. Because defendant's OV score, PRV score, and offense class did not place him in an intermediate sanction cell, he never qualified for an intermediate sanction. Even if defendant were entitled to be sentenced solely on the basis of the PRVs and the offense class, an intermediate sanction

---

[19] Justice Kelly's dissent incorrectly asserts that medical testimony was necessary to prove that the victim suffered life-threatening injuries, especially because defendant did not contest the prosecution's evidence proving the victim's serious and extensive injuries. Contrary to Justice Kelly's assertion, we do not shift the burden of proof to the defendant, but merely note that the statute does not

(continued…)

does not constitute the statutory maximum sentence authorized by the jury's verdict or the guilty plea. See *Harper, supra* at ___. Finally, even if the trial court violated *Blakely* in sentencing defendant to a prison term, any error was harmless because it did not prejudice defendant.

Maura D. Corrigan
Clifford W. Taylor
Elizabeth A. Weaver
Robert P. Young, Jr.
Stephen J. Markman

---

(…continued)
require the prosecution to specifically present medical testimony to prove a "[l]ife threatening or permanent incapacitating injury . . . ." MCL 777.33(1)(c).

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                  No. 128161

RAYMOND A. MCCULLER,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

This case presents the majority with the opportunity to correct an error. When the Court previously sat in judgment of this case, the majority found that no Sixth Amendment[1] violation had occurred at defendant's sentencing. It sanctioned the judge's fact-finding that increased defendant's sentence by moving it from an intermediate sanction cell to a straddle cell. The United States Supreme Court granted certiorari, vacated the decision, and remanded the case to this Court for

---

[1] The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. [US Const, Am VI.]

further consideration in light of its most recent Sixth Amendment precedent, *Cunningham v California*, 549 US __; 127 S Ct 856; 166 L Ed 2d 856 (2007). *McCuller v Michigan*, __ US __; 127 S Ct 1247 (2007). On remand, the majority reaches the same decision as it did before, and it implies that the United States Supreme Court, in remanding this case, simply did not understand Michigan's sentencing laws. Because I believe that the majority fails to explain why *Cunningham* does not require a different result, I must once again dissent.

As I previously concluded, the judicial fact-finding occurring in this case violated defendant's Sixth Amendment right to a trial by jury.[2] Michigan's sentencing guidelines[3] are unconstitutional as applied.

## I. PROCEDURAL FACTS

A jury convicted defendant of assault with intent to do great bodily harm less than murder. MCL 750.84. In imposing sentence, the trial court attributed scores to the prior record variables (PRVs) and the offense variables (OVs). The court assessed 2 PRV points for defendant's previous misdemeanor conviction. It assessed a total of 36 OV points. But in order to arrive at the OV score, the court had to make findings of fact, which it did using a preponderance of the evidence standard. It assessed 10 points for OV 1 on the basis of its conclusion that a

---

[2] See *People v McCuller*, 475 Mich 176, 183; 715 NW2d 798 (2006) (Kelly, J., dissenting).

[3] MCL 777.1 *et seq.*

weapon, other than a gun or knife, touched the victim. MCL 777.31. It assessed 1 point for OV 2 on the basis of the finding of fact that defendant possessed a potentially lethal weapon. MCL 777.32. And it assessed 25 points for OV 3 on the basis of the finding of fact that the victim suffered a life threatening or permanent incapacitating injury. MCL 777.33. Defendant made no admissions at sentencing that supported the points attributed to these OV factors.

Assault with intent to do great bodily harm less than murder is a class D offense under MCL 777.16d. MCL 777.65 sets forth the class D sentencing grid. On this grid, a defendant having a PRV level of 2 points and an OV level of 36 points is placed in cell B-IV. This cell provides a minimum sentence range of 5 to 23 months.[4] MCL 777.65. Defendant had a prior felony conviction that was not used in scoring the PRVs. Consequently, the trial court increased the top number of the range by 25 percent, from 23 to 28 months in accordance with MCL

---

[4] This cell is referred to as a "straddle cell" because the sentencing court may impose either a prison sentence or an intermediate sanction. Straddle cells are addressed by MCL 769.34(4)(c), which provides:

> If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> (*i*) To imprisonment with a minimum term within that range.
>
> (*ii*) To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

769.10[5] and MCL 777.21(3)(a).[6]  This set the minimum sentence range at 5 to 28 months.   The court sentenced defendant within this range, imposing a minimum sentence of 24 months' and a maximum sentence of 15 years' imprisonment.

After sentencing, but before defendant filed his claim of appeal, the United States Supreme Court released its decision in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).  Although defendant had been unable to rely on *Blakely* at sentencing, he could, and did, raise it in the Court of Appeals. Unfortunately, the Court of Appeals did not directly address the issue.  Instead, it relied on the dicta discussion of *Blakely* contained in this Court's decision in *People v Claypool*, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004).  On that basis, it found that defendant was not entitled to resentencing.  *People v McCuller*,

---

[5] MCL 769.10, 769.11, and 769.12 deal with habitual offenders.  They allow the absolute maximum sentence for an offense to increase by a set percentage.   The new maximum set forth in these statutes is the absolute maximum to which the sentencing judge can sentence a defendant.  In this case, because defendant was a second-offense habitual offender, his maximum possible sentence increased from 10 to 15 years.  MCL 750.84; MCL 769.10(1)(a).

[6] MCL 777.21(3) provides, in relevant part:

> If the offender is being sentenced under section 10, 11, or 12 of chapter IX [MCL 769.10, 769.11, and 769.12], determine the offense category, offense class, offense variable level, and prior record variable level based on the underlying offense. To determine the recommended minimum sentence range, increase the upper limit of the recommended minimum sentence range determined under part 6 for the underlying offense as follows:

> (a) If the offender is being sentenced for a second felony, 25%.

4

unpublished opinion per curiam of the Court of Appeals, issued January 11, 2005 (Docket No. 250000).

Originally, this Court held the case in abeyance for the matter of *People v Drohan*, see 472 Mich 881 (2005). Later, oral argument was heard for the purpose of determining whether to grant the application or take other peremptory action pursuant to MCR 7.302(G)(1). The majority dispatched the case in a mere memorandum opinion. It concluded that defendant was not entitled to an intermediate sanction cell sentence and that the sentencing court properly made judicial findings of fact in assessing OV points, regardless of *Blakely*. *People v McCuller,* 475 Mich 176; 715 NW2d 798 (2006). I dissented, concluding that a Sixth Amendment violation had occurred and that the entire sentencing guidelines must be found unconstitutional when applied as they were in this case. *Id*. at 183.

Defendant sought leave to proceed *in forma pauperis* and petitioned for a writ of certiorari in the United States Supreme Court. The Court granted both motions. It then vacated this Court's judgment, remanding the case for further consideration and directing us to reconsider it in light of *Cunningham*. *McCuller*, 127 S Ct at 1247. This Court ordered that the case be argued with *People v Harper*, (Docket No. 130988), and *People v Burns*, (Docket No. 131898). *People v McCuller*, 477 Mich 1288 (2007). We heard oral argument in the three cases in April 2007.

## II. Michigan's Sentencing Scheme

A review of Michigan's sentencing statutes must begin with MCL 769.8, which provides:

> (1) When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.

> (2) Before or at the time of imposing sentence, the judge shall ascertain by examining the defendant under oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the defendant's criminal character or conduct, which facts and other facts that appear to be pertinent in the case the judge shall cause to be entered upon the minutes of the court.

Under this statute, in a case not falling into an exception, a court must initially determine the minimum sentence. That sentence must be within the range set by the sentencing guidelines unless the sentencing judge finds that substantial and compelling reasons exist to exceed the range. MCL 769.34(2) and (3). Typically, in Michigan, the maximum sentence is established by statute. For instance, MCL 750.84 provides that the maximum sentence for assault with intent to do great bodily harm less than murder is ten years or a fine of $5,000. Unless a

defendant has past convictions, the sentencing court cannot exceed the maximum sentence provided by statute.[7]

But MCL 769.8 makes clear that it is only the general rule. It makes this apparent by noting that exceptions do exist. They are indicated by the phrases "except as otherwise provided in this chapter" and "except as provided in this chapter." MCL 769.8(1).

One major exception to MCL 769.8 is a determinate sentence.[8] Determinate sentences are specific, fixed sentences, in contrast to indeterminate sentences, which fall within a range. The Legislature sets these fixed sentences by statute. For instance, a first offense of carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm) carries a mandatory determinate sentence of two years. A second conviction of felony-firearm requires a five-year sentence. MCL 750.227b(1). Given that these crimes require determinate sentences, the guidelines do not apply to them. Instead, they fall into the exceptions noted in MCL 769.8(1).

Another major exception to the focus on minimum sentences in MCL 769.8 involves sentences falling in an intermediate sanction cell. It is this exception that is the centerpiece of this case. Under Michigan's sentencing guidelines,

---

[7] As noted above, MCL 769.10, 769.11, and 769.12 set new maximum sentences for habitual offenders.

intermediate sanction cells shift the sentencing court's attention from minimum sentences to maximum sentences.

### III. INTERMEDIATE SANCTION CELLS

MCL 769.34(4)(a) creates intermediate sanction cells. It provides:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

MCL 769.31(b) further defines "intermediate sanction":

> "Intermediate sanction" means probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed. Intermediate sanction includes, but is not limited to, 1 or more of the following:

> (*i*) Inpatient or outpatient drug treatment or participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1082.

> (*ii*) Probation with any probation conditions required or authorized by law.

> (*iii*) Residential probation.

> (*iv*) Probation with jail.

> (*v*) Probation with special alternative incarceration.

---

(…continued)

[8] A "determinate sentence" is "[a] sentence for a fixed length of time rather than for an unspecified duration." Black's Law Dictionary (7th ed), p 1367.

(*vi*)  Mental health treatment.

(*vii*)  Mental health or substance abuse counseling.

(*viii*)  Jail.

(*ix*)  Jail with work or school release.

(*x*)  Jail, with or without authorization for day parole under 1962 PA 60, MCL 801.251 to 801.258.

(*xi*)  Participation in a community corrections program.

(*xii*)  Community service.

(*xiii*)  Payment of a fine.

(*xiv*)  House arrest.

(*xv*)  Electronic monitoring.

When one reads these statutes together, it becomes apparent that intermediate sanction cells have a highly unusual role in Michigan's sentencing scheme.  If a defendant's minimum sentence range falls in an intermediate sanction cell, the guidelines are no longer concerned with the defendant's minimum sentence.  Instead, under MCL 769.34(4)(a), the guidelines set the maximum sentence to which the court may sentence the defendant.  That maximum is a jail term of either the upper limit of the guidelines range for the recommended minimum sentence or 12 months, whichever is shorter.  The guidelines statutes do not permit a court to sentence a defendant to prison when his or her guidelines score falls within an intermediate sanction cell.  The court is required to impose a maximum term of 12 months or less, unless it can state substantial and compelling reasons for a longer sentence.  MCL 769.34(4)(a).

9

In this case, if the trial court had not entered a score for OVs 1, 2, and 3, defendant's OV score would have dropped to zero. This would have moved him from the B-IV cell to the B-I cell. The B-I cell provides a minimum sentence range for a second-offense habitual offender of zero to 11 months in jail. MCL 777.21(3)(a); MCL 777.65. Because its upper limit is less than 18 months, the B-I cell is an intermediate sanction cell. Defendant's maximum sentence would have been 11 months in jail. MCL 769.34(4)(a).

But the trial court did not impose this maximum sentence. By making judicial findings of fact, the judge moved defendant out of the intermediate sanction cell and into a straddle cell. The judge then sentenced defendant to a higher maximum sentence than would have been possible had the sentence been based only on the jury's verdict and the defendant's criminal history. Because the judge increased defendant's OV score by making his own findings of fact, findings not made by the jury, defendant's sentence violated his Sixth Amendment right to a trial by jury. And it contradicted the United States Supreme Court's holding in *Blakely*, which was most recently reinforced by *Cunningham*.

IV. THE UNITED STATES SUPREME COURT'S

PRECEDENT REGARDING "STATUTORY MAXIMUMS"

A. *MCMILLAN V PENNSYLVANIA*

There is considerable precedent from the United States Supreme Court regarding judicial modification of sentences using facts found by a judge after a

jury's verdict. These judge-determined facts are referred to as "sentencing factors." In *McMillan v Pennsylvania*,[9] the Court addressed the constitutionality of Pennsylvania's mandatory minimum sentencing act, 42 Pa Cons Stat 9712. That act provided for a mandatory minimum sentence for certain felonies if the sentencing judge found, by a preponderance of the evidence, that the defendant "'visibly possessed a firearm' during the commission of the offense." *McMillan, 477 US at 81.*

The United States Supreme Court found that the visible-possession requirement was a mere sentencing factor that did not change the prosecution's burden of proving guilt beyond a reasonable doubt. *Id*. at 86-88. It made another important point in *McMillan*: There are constitutional limitations on how far a state may go in reducing the factual support needed to prove a criminal offense beyond a reasonable doubt. The Court paid special attention to the fact that 42 Pa Cons Stat 9712 did not increase the maximum penalty faced by the defendant:

> Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. [*McMillan, 477 US at 87-88.*]

_____

[9] 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

11

The Supreme Court next discussed sentencing factors in *Jones v United States*, 526 US 227; 119 S Ct 1215; 143 L Ed 2d 311 (1999). It addressed whether the federal carjacking statute[10] constituted three separate crimes or one crime with sentencing factors that increased the maximum penalty. *Id*. at 229. The Court concluded that a fair reading of the statute required it to find three separate offenses. But it went on to discuss alternative reasons for requiring that the state must prove to a jury all the "elements" of a crime beyond a reasonable doubt. They involve constitutional law. The Court's focus quickly centered on *McMillan*'s discussion of an increase in the maximum penalty:

> The terms of the carjacking statute illustrate very well what is at stake. If serious bodily injury were merely a sentencing factor under [18 USC 2119(2)] (increasing the authorized penalty by two thirds, to 25 years), then death would presumably be nothing more

---

[10] 18 USC 2119. At the time, the statute provided:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

than a sentencing factor under subsection (3) (increasing the penalty range to life). If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment. [*Id*. at 243-244.]

The reduction of the role of the jury greatly troubled the Supreme Court. In fact, it found the reduction inconsistent with the protections offered by the United States Constitution. It indicated that removal from the jury of control over the facts necessary for determining a statutory sentencing range would raise a genuine Sixth Amendment issue. *Id*. at 248. The Court stated that any doubt on the issue of statutory construction must be resolved in favor of avoiding such Sixth Amendment questions. *Id*. at 251.

## C. *APPRENDI V NEW JERSEY*

The next year, the Supreme Court took an important step forward in its discussion of sentencing factors, in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). *Apprendi* dealt with a New Jersey hate-crime law. The statute allowed a defendant's maximum sentence to be increased from 10 to 20 years if the sentencing court found that the defendant "'acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" *Id*. at 468-469, quoting NJ Stat Ann 2C:44-3(e). The sentencing court could make the finding using a preponderance of the evidence. *Apprendi*, 530 US at 468. In its analysis, the

13

Supreme Court specifically built on *Jones*. It concluded that the Fourteenth Amendment of the United States Constitution commanded the same answer for state statutes as the Fifth and Sixth amendments required in *Jones*. *Id*. at 476.

The Court found that a legislature could not change the elements of a crime simply by labeling some of them "sentencing factors." Such actions run afoul of due process and violate a defendant's Sixth Amendment protections. The Court stated that a sentencing court could exercise its judicial discretion on sentencing factors only as long as the sentence imposed fell within the appropriate statutory limits. *Id*. at 481-482. The Court expressed concern that a defendant not be deprived of his or her liberty or otherwise stigmatized by a conviction and sentence not authorized by the jury's verdict. For proper protection, the Court required that procedural practices adhere to the basic principles undergirding the requirement that the prosecution prove all facts constituting the statutory offense beyond a reasonable doubt. *Id*. at 483-484. The Court reasoned that increasing punishment beyond the statutory maximum violated those principles:

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached. [*Id*. at 484.]

In reiterating its reasoning and holding in *Apprendi*, the Supreme Court used the phrase "statutory maximum":

14

In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." [*Id*. at 490, quoting *Jones*, 526 US at 252-253 (Stevens, J., concurring).]

## D. *RING V ARIZONA*

Two years later, the Supreme Court renewed its discussion of "statutory maximums" in *Ring v Arizona*, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002). That case dealt with Arizona's first-degree murder statute. The punishment for violation of this statute was life imprisonment or death. The statute referred to another statute that required a separate sentencing hearing. The judge was charged with determining at the hearing whether specific circumstances (sentencing factors) existed, allowing imposition of the death penalty. *Id*. at 592-593. The Supreme Court built on its decisions in *Jones* and *Apprendi* to conclude that a sentence of death violated a defendant's Sixth Amendment rights under these statutes:

> The dispositive question, we said, "is one not of form, but of effect." If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt. A defendant may not be "expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." [*Id*. at

15

602, quoting *Apprendi*, 530 US at 483, 494 (citations omitted; emphasis in *Apprendi*).]

On the basis of this reasoning, the Court found that the "statutory maximum" sentence was life in prison, despite the fact that the statute allowed imposition of a sentence of death. This is because, in order to impose the death penalty, the judge had to make factual findings in addition to those reflected by the jury's verdict. The Supreme Court found nothing to distinguish the case from *Apprendi*. *Ring,* 536 US at 604-606. It reached this conclusion because Arizona's enumerated aggravating factors were the functional equivalent of an element of a greater offense. Therefore, the Sixth Amendment required that a jury find those factors beyond a reasonable doubt. *Id.* at 609.

## E. *BLAKELY V WASHINGTON*

The Supreme Court took its biggest step in defining the expression "statutory maximum" in *Blakely*. In that case, the defendant pleaded guilty of second-degree kidnapping involving domestic violence and the use of a firearm. The standard sentencing range for the offense was four years and one month to four years and five months in prison. *Blakely*, 542 US at 298-299. But under Washington State's sentencing guidelines, a court could impose a sentence above the standard range if it found substantial and compelling reasons to justify an "exceptional sentence." *Id.* at 299. The defendant had admitted no relevant facts other than having committed acts in violation of the elements of the crime. *Id.*

16

But the sentencing court imposed an exceptional sentence of 7 1/2 years[11] after hearing the complainant's version of the kidnapping. The sentencing court based this departure on a finding that the defendant had exhibited deliberate cruelty. This was a statutorily enumerated ground for departure in domestic violence cases in Washington. *Id*. at 300.

Washington argued that its system did not present a Sixth Amendment problem because state law provided an absolute maximum sentence of ten years' imprisonment and in no instance could an exceptional sentence exceed this length. *Id*. at 303. Washington contended that ten years was the true "statutory maximum" for purposes of Sixth Amendment review.

But the Supreme Court rejected this argument. Instead, it defined the "statutory maximum" as the maximum sentence that can be imposed without judicial fact-finding:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority. [*Id*. at 303-304 (emphasis in original; citations omitted).]

---

[11] Washington's sentencing scheme provided for determinate sentences. *Blakely*, 542 US at 308.

17

Hence, for Sixth Amendment purposes, the maximum sentence was not ten years. It was four years and five months. This was because that sentence was the maximum the court could have imposed solely on the basis of the facts the defendant admitted when pleading guilty. *Id.* at 304. The Supreme Court concluded that its determination was the only one that would properly effectuate the people's control of the judiciary as intended by the Framers of the United States Constitution:

> Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. One can certainly argue that both these values would be better served by leaving justice entirely in the hands of professionals; many nations of the world, particularly those following civil-law traditions, take just that course. There is not one shred of doubt, however, about the Framers' paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by strict division of authority between judge and jury. As *Apprendi* held, every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment. [*Id.* at 313 (emphasis in original).]

### F. *UNITED STATES V BOOKER*

The Supreme Court next discussed "statutory maximums" and "sentencing factors" in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). In that case, the Court addressed the applicability of the preceding line of cases to the federal sentencing guidelines. The prosecution charged Booker[12] with

---

[12] *Booker* involved consolidated cases that included another defendant, Fanfan. In the interest of brevity, I will discuss only defendant Booker.

possession with intent to distribute at least 50 grams of cocaine base. The federal statute for this crime provided a maximum sentence of life in prison. But because of Booker's criminal history and the quantity of cocaine base that the jury found was involved, the guidelines required a maximum sentence of 21 years and 10 months' imprisonment. Instead of imposing that sentence, the trial court held a hearing during which it made additional findings of fact. It concluded that Booker had possessed another 566 grams of cocaine base and that he had obstructed justice. Accordingly, using a preponderance of the evidence standard, the court increased his maximum sentence to 30 years in prison. *Id.* at 227.

After a discussion of *Jones*, *Apprendi*, *Ring*, and *Blakely*, the Supreme Court found the federal guidelines indistinguishable from the Washington guidelines that were at issue in *Blakely*:

> Booker's actual sentence, however, was 360 months, almost 10 years longer than the Guidelines range supported by the jury verdict alone. To reach this sentence, the judge found facts beyond those found by the jury: namely, that Booker possessed 566 grams of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just as in *Blakely*, "the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." There is no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in these cases. [*Id.* at 235, quoting *Blakely*, 542 US at 305 (citation omitted).]

Again, the Supreme Court found it irrelevant that a statute existed setting an absolute maximum sentence. The sentencing court could not impose the

absolute maximum sentence in every case. Instead, in cases like Booker's, the jury's verdict supported only a lower maximum sentence. *Booker*, 543 US at 234-235. The Supreme Court concluded:

> Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. [*Id*. at 244.]

On this basis, the Supreme Court invalidated the statutory provisions that made the federal sentencing guidelines mandatory. *Id*. at 226-227.

### G. *CUNNINGHAM V CALIFORNIA*

The final link in the "sentencing factor"/"statutory maximum" chain is *Cunningham*. Cunningham was convicted of "continuous sexual abuse of a child under the age of 14." *Cunningham*, 127 S Ct at 860. California's determinate sentencing law (DSL) created a three-tiered sentencing system for most crimes. The statute defining a defendant's offense provided a lower, a middle, and an upper sentence. Cal Penal Code 1170 mandated that the trial court impose the middle term, unless circumstances in mitigation or aggravation existed. The trial court made factual findings under a preponderance of the evidence standard regarding whether aggravating circumstances existed. *Cunningham*, 127 S Ct at 861-863.

In Cunningham's case, the DSL provided for sentences of 6, 12, or 16 years. The sentencing court found by a preponderance of the evidence the

20

existence of one mitigating factor and six aggravating factors. It found that the aggravating factors outweighed the mitigating factor and imposed the 16-year sentence. *Id*. at 860-861. As in the cases preceding *Cunningham*, the United States Supreme Court found that the judicial fact-finding that increased the maximum sentence violated the Sixth Amendment.

Despite California's arguments to the contrary, the Supreme Court found nothing to distinguish the DSL from the sentencing that occurred in *Blakely* and *Booker*:

> California's DSL, we note in this context, resembles pre-*Booker* federal sentencing in the same ways Washington's sentencing system did: The key California Penal Code provision states that the sentencing court "*shall order* imposition of the middle term" absent "circumstances in aggravation or mitigation of the crime," [Cal Penal Code] 1170(b) (emphasis added), and any move to the upper or lower term must be justified by "a concise statement of *the ultimate facts*" on which the departure rests, [Cal Ct R] 4.420(e) (emphasis added). [*Cunnigham*, 127 S Ct at 866 n 10 (emphasis in original).]

Quite simply, the Supreme Court viewed *Cunningham* as a continuation of its earlier precedent. It broke no new ground. But for the first time, the Supreme Court characterized its often-repeated holding as a bright-line rule:

> Under California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely*, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. 542 U.S., at 303, 124 S.Ct. 2531 ("The 'statutory

21

maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, the DSL violates *Apprendi's bright-line rule: Except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."* [*Cunningham*, 127 S Ct at 868, quoting *Apprendi*, 530 US at 490 (citations omitted; second emphasis added).]

Again, it was irrelevant that there existed the possibility of an absolute maximum sentence of 16 years. The Supreme Court stressed that the only concern was whether the bright-line rule laid down in *Apprendi*, *Blakely*, and *Booker* was violated. The Court expressed frustration at the state's inability or unwillingness to follow this precedent. *Id*. at 869-870. The Supreme Court left to California how to eliminate the constitutional violation. *Id*. at 871.

In summary, the Supreme Court established a consistent precedent from *McMillan* to *Cunningham*. The bright-line rule established was the same before and after *Cunningham*. And the Court's decision to remand this case must be considered in light of this fact.

V. THE BRIGHT-LINE RULE AND MICHIGAN'S GENERAL SENTENCING SCHEME

As discussed earlier, Michigan's sentencing guidelines generally focus on a defendant's minimum sentence. The average defendant's criminal history, the admitted facts, and the jury's verdict alone would allow the sentencing court, without recourse to judicial fact-finding, to impose the maximum sentence

22

provided by law. Because of this, the judicial fact-finding necessary to score the OVs moves the typical defendant within a predetermined range of possible sentences. And the defendant's Sixth Amendment rights are not implicated, because all the facts necessary to support the maximum sentence have been proved to a jury beyond a reasonable doubt.

Such situations do not threaten the basic principles undergirding this country's jury-driven legal system. A defendant knows what maximum sentence he or she is facing regardless of judicial fact-finding. *Apprendi* noted that judicial fact-finding is acceptable when it does not increase the maximum penalty for a crime or create a separate offense calling for a separate penalty. "'[Judicial fact-finding] operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding[s] . . . .'" *Apprendi*, 530 US at 486, quoting *McMillan*, 447 US at 88. Because the right to a trial by jury is completely protected in such situations, there are no Sixth Amendment concerns.

The typical application of the Michigan sentencing guidelines more readily relates to *McMillan*. The score given to the OVs merely shifts a defendant's sentence within the minimum sentence range under the guidelines. It does not increase the defendant's maximum sentence. A defendant whose criminal history and jury verdict do not place him or her in an intermediate sanction cell always knows what the potential maximum sentence will be: it is the maximum penalty

23

prescribed by Michigan law. All of this changes, however, when an intermediate sanction cell is involved.

## VI. THE BRIGHT-LINE RULE AND MICHIGAN'S INTERMEDIATE SANCTION CELLS

When a defendant is entitled to a sentence that is within the range specified in an intermediate sanction cell, MCL 769.34(4)(a) sets his or her maximum sentence. That maximum sentence is a jail term of either the upper limit of the recommended minimum sentence range or 12 months, whichever is shorter. Under the guidelines, the court *must* impose this maximum sentence, unless it can state substantial and compelling reasons to increase the sentence. Therefore, the process is no longer concerned with the defendant's minimum sentence. Under the Supreme Court's bright-line rule, this alteration in focus changes the defendant's "statutory maximum."

The new maximum sentence set under MCL 769.34(4)(a) becomes the defendant's "statutory maximum." This is true because it is the longest sentence the court can give a defendant solely on the basis of the defendant's criminal record and admissions and the jury's verdict. *Cunningham*, 127 S Ct at 868; *Booker*, 543 US at 244; *Blakely*, 542 US at 301; *Apprendi*, 530 US at 490; *Jones*, 526 US at 251-252. And if the court makes findings of fact moving the sentence to a higher statutory maximum, the defendant faces either (1) a different criminal charge or (2) the increased stigma of an extended sentence. This is specifically what the Supreme Court sought to avoid. *Apprendi*, 530 US at 484.

24

Any judicial fact-finding that shifts a defendant's sentence above the statutory maximum is unconstitutional and violates *Jones* and its progeny. A court engages in judicial fact-finding by scoring the OVs or stating substantial and compelling reasons to depart from the sentencing guidelines range. The sentencing court makes its own findings of fact by a preponderance of the evidence. These findings are separate and distinct from the findings establishing the elements of the crime, which must be proved to a jury beyond a reasonable doubt. Such sentencing mirrors the sentencing in *Cunningham*, in which the Supreme Court held:

> Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . [this] violates *Apprendi's bright-line rule*: Except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [*Cunningham*, 127 S Ct at 868, quoting *Apprendi*, 530 US at 490 (emphasis added).]

As in *Cunningham*, any judicial fact-finding that increases a defendant's maximum sentence crosses the Supreme Court's bright line. And in doing so, it violates the constitution.

To fully analyze Michigan's sentencing system, it must be determined who is entitled to an intermediate sanction cell sentence. The Supreme Court's bright-line rule provides the answer to this question. "Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"

25

*Cunningham*, 127 S Ct at 868, quoting *Apprendi*, 530 US at 490. Hence, a defendant is entitled to a sentence based solely on (1) the defendant's prior convictions and (2) any facts that he or she admitted and any facts that were specifically found by the jury.

This requires a conclusion that, in order to determine a defendant's appropriate maximum sentence, a sentencing court should score only the PRVs. They reflect the defendant's prior convictions and relations to the criminal justice system. The sentencing court is free to score these because they fall under one of the exceptions noted in the bright-line rule: the defendant's prior convictions.

Scoring the OVs, on the other hand, requires factual determinations that are made by the trial court using a preponderance of the evidence standard. They are judicial determinations that occur only after the jury's verdict. Such findings of fact fall directly in line with the *Cunningham* decision. "Because [OVs] are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . [scoring them] violates *Apprendi*'s bright-line rule[.]" *Cunningham*, 127 S Ct at 868.[13] The only time the

---

[13] The majority accuses me of ignoring the language of MCL 769.34(4)(a). Even a casual review of this opinion will show that the accusation is untrue. The majority asks why I would not require the OVs to be scored along with the PRVs. The answer is simple: The Sixth Amendment entitles a defendant to a sentence based solely on (1) the defendant's prior convictions, (2) any facts he or she has admitted, and (3) any facts that were specifically found by the jury. *Cunningham*, 127 S Ct at 868. The statutory language must bow to the requirements of the United States Constitution.

court should score an OV is when the defendant admitted the fact justifying the score or a jury found its existence beyond a reasonable doubt. This occurs only in rare cases, and it did not occur in this case.

Under the bright-line rule, a Michigan defendant is entitled to an intermediate sanction as a sentence when his or her PRV level alone supports such a sentence. On the other hand, a defendant whose PRV level is too high to place him or her in an intermediate sanction cell is not entitled to an intermediate sanction cell sentence. The latter defendant falls under the general sentencing scheme and is subject to the absolute maximum sentence set by law. In that case, the trial court is free to make the judicial findings of fact necessary to score the OVs.

### A. HOW THE TRIAL COURT CALCULATED DEFENDANT'S SENTENCE

The case before us demonstrates the distinction. Defendant did not admit the facts necessary to attribute a score to OVs 1, 2, and 3. And the jury made no specific findings of fact regarding these OVs. Thus, defendant's sentence was based on judicial fact-finding, in violation of the bright-line rule. His sentence should have been based solely on his PRV level. Defendant's PRV level was 2 points, which placed him in the B-I cell. The B-I cell provides a minimum sentence range of zero to 11 months for a second-offense habitual offender. MCL 777.65; MCL 777.21(3)(a). This is an intermediate sanction cell. MCL 769.34(4)(a). Therefore, defendant was entitled to an intermediate sanction cell sentence. As discussed earlier, his maximum sentence was supposed to be 11 months in jail. The court could not properly impose a maximum sentence exceeding 11 months without using facts that defendant had not admitted or that were not proved to a jury beyond a reasonable doubt.

But the trial judge made such findings of fact to score OVs 1, 2, and 3. These judicial findings increased defendant's maximum sentence because they moved him into a straddle cell. At that point, he was no longer entitled to an intermediate sanction cell sentence that would be capped at 11 months in jail. Because the judge's findings of fact increased defendant's maximum sentence, they violated defendant's Sixth Amendment rights under *Apprendi*. Defendant suffered greater stigma through an increased sentence than the stigma he would

have faced had his sentence been based solely on his PRV level. This increased stigma and punishment undermine the basic concepts of the right to a trial by jury and defeat the intent of the Framers to ensure a publicly controlled judiciary. *Apprendi*, 530 US at 483-484.

Scoring the OVs in this case was the functional equivalent of convicting defendant of a different criminal offense. Although he had been convicted of assault with intent to do great bodily harm less than murder, the trial court sentenced defendant for an assault with intent to do great bodily harm less than murder (1) in which the victim was touched by a weapon,[14] (2) in which the defendant possessed a potentially lethal weapon,[15] and (3) in which the victim suffered life threatening or permanent incapacitating injury.[16] Just as in *Ring*, the Sixth Amendment requires that the jury find the facts that enhanced defendant's sentence beyond a reasonable doubt. *Ring*, 536 US at 609. Because this did not occur, defendant's Sixth Amendment rights were violated by the sentence imposed.

---

[14] This was the finding under OV 1. MCL 777.31(1)(c), now MCL 777.31(1)(d).

[15] This was the finding under OV 2. MCL 777.32(1)(d), now MCL 777.32(1)(e).

[16] This was the finding under OV 3. MCL 777.33(1)(c).

## B.  AT WHAT POINT MAY THE OVs BE SCORED?

The majority relies on MCL 777.21 to argue that no defendant is entitled to a sentence in Michigan until after the sentencing court scores the OVs. This argument withers when examined in light of the *Blakely* line of cases.  The holding there is easily recited:  Any facts, aside from past convictions, that increase a defendant's maximum sentence must either be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Booker*, 543 US at 244.

The majority avoids directly applying this central tenet.  Its insistence that a defendant would or could have received a longer sentence under the traditional application of the sentencing scheme is irrelevant.  A defendant is *entitled* to the maximum sentence authorized by his or her past convictions, the facts he or she admitted, and the facts established by the jury's verdict.  See *id*.  A defendant's sentence cannot properly be based on facts that the judge later found using a preponderance of the evidence standard.  Hence, if the judge determines the facts used to score the OVs, the OVs must be scored after it is determined whether a defendant falls into an intermediate sanction cell.

The majority's reliance on MCL 777.21 does not obviate this central tenet.  This statute is similar to the statute in *Ring*.  There, the judge was directed to conduct a separate sentencing hearing to determine the existence of specified circumstances in order to decide whether to impose the death penalty or life imprisonment. *Ring*, 536 US at 592.  The fact that it is possible to impose a longer

sentence under the sentencing scheme is not relevant. A defendant is *entitled* to a sentence based solely on the jury's verdict and the defendant's admissions and criminal history. The Supreme Court explained:

> In an effort to reconcile its capital sentencing system with the Sixth Amendment as interpreted by *Apprendi*, Arizona first restates the *Apprendi* majority's portrayal of Arizona's system: Ring was convicted of first-degree murder, for which Arizona law specifies "death or life imprisonment" as the only sentencing options, see Ariz. Rev. Stat. Ann. § 13-1105(C) (West 2001); Ring was therefore sentenced within the range of punishment authorized by the jury verdict. See Brief for Respondent 9-19. This argument overlooks *Apprendi*'s instruction that "the relevant inquiry is one not of form, but of effect." 530 U.S., at 494. In effect, "the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict." [*Id.* at 603-604.]

The same is true of the Michigan sentencing guidelines. It does not matter that, as in defendant's case, there are two possible maximum sentences for the offense of which defendant was convicted. Defendant must receive the maximum sentence that is supported by the jury's verdict, his prior record, and his admissions alone.[17] *Id.* But that did not occur in this case. Instead, he was given

---

[17] The same analysis applies to another of the majority's contentions: that a defendant is not entitled to an intermediate sanction until after the sentencing court decides whether substantial and compelling reasons exist to exceed the guidelines range. That the statute provides for judicial fact-finding is irrelevant. The Sixth Amendment requires that all that may be considered are the defendant's admissions, his or her prior record, and the jury's verdict. A defendant is entitled to whatever maximum sentence these warrant without any judicial fact-finding whatsoever.

a longer sentence than was authorized by the jury's verdict.[18]  For that reason, the

sentence violated the Sixth Amendment.  *Id*. at 609.

## VII.  A MAXIMUM BY ANY OTHER NAME

Here and in *People v Harper*,[19] the majority strives to convince the reader

that the maximum sentence that MCL 769.34(4)(a) sets for intermediate sanction

cells is really a minimum sentence.  To arrive at this conclusion, it takes the reader

through what might be mistaken for a shell game of statutory language.  But a

reading of the pertinent statutes as they are written undermines the central support

---

[18] In *People v Harper*, 479 Mich ___, ___ n 25; ___ NW2d ___ (2007) (Docket Nos. 130988 and 1319898, decided July 26, 2007), the majority attempts to distinguish *Ring* by focusing on the fact that the death sentence in that case could be imposed only if a judge found aggravating circumstances.  It concludes that the situation in *Ring* is distinct from the situation in Michigan because only one maximum sentence exists in Michigan.  As explained above, this is simply not accurate.  The instant case illuminates the reason why.  Here, just as in *Ring*, defendant faced one maximum sentence (11 months in jail) until the court made findings of fact to move him out of an intermediate sanction cell.  Whether this is called identifying "aggravating circumstances" or "scoring of the OVs," the fact remains the same:  The trial court increased the defendant's sentence by making findings not supported by the jury's verdict, the defendant's admissions, and the defendant's past record.  In so doing, it violated *Blakely*'s bright-line rule.

The argument that there is only one maximum sentence is the argument made unsuccessfully by Arizona in *Ring*.  Just as the argument failed in *Ring,* it must fail in this case.  That an absolute maximum sentence exists is irrelevant if judicial fact-finding not supported by his admissions or prior conviction or the jury's verdict prevented defendant from receiving a lower statutory maximum sentence.

[19] *Id.* at ___.

32

for the majority's decision to affirm defendant's sentence despite the Supreme Court's remand.  For example, MCL 769.34(4)(a) provides:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court *shall impose an intermediate sanction* unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections.  An intermediate sanction may include a jail term that *does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less*.  [Emphasis added.]

The language of this statute is not ambiguous.  It mandates that the sentencing court impose an intermediate sanction when a defendant falls into an appropriate cell, unless the court makes judicial findings of fact to support a departure.  MCL 769.34(4)(a).  It also defines the outer limit of an intermediate sanction: 12 months in jail.  Because this is the highest sentence a defendant may face, it is a maximum sentence.  Without judicial fact-finding, the trial judge is not authorized to impose so much as a 13-month sentence.[20]

Even the majority seems to concede that, considering only the language of MCL 769.34(4)(a), 12 months is the maximum sentence.  But it believes that this

---

[20] The majority claims that a Michigan defendant is liable to serve the absolute maximum sentence in every case.  See *Harper*, 479 Mich at ___ n 25.  MCL 769.34(4)(a) shows the fallacy of this point.  Some Michigan defendants face no higher maximum than 12 months in jail, even though a second, higher statutory maximum sentence exists for their crime.  This undeniable fact destroys the majority's premise that Michigan has only one maximum sentence for each crime.

33

conclusion changes when MCL 769.34(4)(a) is viewed in light of other sentencing statutes. The majority first relies on MCL 769.8(1), which provides:

> When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, *except as otherwise provided in this chapter*. The maximum penalty provided by law shall be the maximum sentence in all cases *except as provided in this chapter* and shall be stated by the judge in imposing the sentence. [Emphasis added.]

The majority focuses on the language "[t]he maximum penalty provided by law shall be the maximum sentence in all cases . . . ." But it dismisses as inapplicable the fact that this phrase is modified by "*except as provided in this chapter* . . . ." The Legislature twice makes clear that there are exceptions to the general rule stated in the statute. MCL 769.8(1). By treating these clauses as irrelevant, the majority ignores language chosen by the Legislature and rewrites the statute.

The majority concludes that the clauses must not refer to intermediate sanction cells. It reasons that the provisions creating intermediate sanction cells were enacted after the language contained in MCL 769.8(1) and that the clauses must refer only to preexisting exceptions. Not only does this defy logic, it is unsupported by any authority whatsoever.

The majority's new rule of statutory construction would render it nearly impossible to read statutes together. Someone reading two statutes that seem to discuss the same subject would be obliged to review the date of enactment of each

34

statute to see which came first. If the language in the earlier statute made the two relate to one another, that language would have to be ignored. Hence, any attempt to read two statutes together must be accompanied by a history lesson. Such an odd requirement seems ill-advised.

Not only does the majority's new rule create confusion, it contradicts the majority's supposed "plain language" approach to statutory interpretation. The majority effectively rewrites MCL 769.8(1) to read:

> When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter (*but only if this exception predates this statute*). The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter (*but not if that exception was enacted after 1927*) and shall be stated by the judge in imposing the sentence.

This Court has repeatedly admonished that a court must not read into a statute something that the Legislature did not put there. *AFSCME v Detroit*, 468 Mich 388, 412; 662 NW2d 695 (2003).[21] But the majority has done just that in this case. Does the majority now abandon this classic rule of statutory interpretation?

---

[21] This principle has often been repeated by those comprising the majority here. See *People v Williams*, 475 Mich 245, 259; 716 NW2d 208 (2006), *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004), *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003), *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003), *Lesner v Liquid Disposal, Inc*, 466 Mich 95, 101; 643 NW2d 553 (2002), and *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

The majority notes that, under MCL 769.8(1), there are cases in which the sentencing court will not fix the minimum sentence and in which the absolute maximum sentence will not apply. It notes that other provisions in the chapter of the Code of Criminal Procedure in which MCL 769.8(1) appears state the exceptions to the general rule. MCL 769.34 is in that chapter of the code. And MCL 769.34(4)(a) provides that the sentencing court will set the maximum sentence rather than the minimum in cases involving intermediate sanction cells. Therefore, far from indicating that intermediate sanction cells set minimum sentences, when read together, these statutes demonstrate a legislative intent that intermediate sanction cells serve as an exception to the general rule. The Legislature intended intermediate sanction cells to dictate a maximum sentence. MCL 769.34(4)(a); MCL 769.8(1).

The majority also turns to MCL 769.9, which provides:

(1) The provisions of this chapter relative to indeterminate sentences shall not apply to a person convicted for the commission of an offense for which the only punishment prescribed by law is imprisonment for life.

(2) In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.

36

(3) In cases involving a major controlled substance offense for which the court is directed by law to impose a sentence which cannot be less than a specified term of years nor more than a specified term of years, the court in imposing the sentence shall fix the length of both the minimum and maximum sentence within those specified limits, in terms of years or fraction thereof, and the sentence so imposed shall be considered an indeterminate sentence.

The majority argues that, because this statute contains nothing to indicate that the sanctions are determinate, it supports a reading of intermediate sanction cell sentences as minimum sentences. But a reference to MCL 769.9 shows the fallacy of this reasoning. MCL 769.9(1) limits the courts' ability to impose intermediate sanction cell sentences. It provides that intermediate sanctions may not be used for offenses for which "the only punishment prescribed by law is imprisonment for life." It makes no other limitation, and no other should be read into it.

The majority claims that nowhere does the Legislature state that intermediate sanctions are an exception to the Michigan scheme of indeterminate sentencing. But it is more accurate to assert that nowhere does the Legislature indicate this *except* in the statutes creating intermediate sanctions. MCL 769.34(4)(a) makes clear that the maximum sentence possible, absent substantial and compelling reasons to exceed it, is 12 months in jail. MCL 769.31(b) also specifically allows for jail sentences. The Legislature wrote determinate sentences into these statutes. There would be no point in endeavoring to do it more clearly. And there was no need to do it anywhere else.

37

In the final analysis, the point is irrelevant. What matters is not whether the statute establishes intermediate sanction cell sentences as indeterminate or determinate sentences. What is crucial is whether a defendant's maximum sentence can be increased as a result of judicial fact-finding. *Cunningham*, 127 S Ct at 868. It is not significant that defendant's sentence in this case was zero to 11 months in jail or simply 11 months in jail. In either case, the Sixth Amendment would be violated by judicial fact-finding that increases the maximum sentence above the 11-month mark. *Id.*

### A. MICHIGAN'S MIXED DETERMINATE-INDETERMINATE SENTENCING SCHEME

It seems that the preceding argument is a component of the majority's contention that Michigan has a true indeterminate sentencing scheme. I would agree that Michigan generally has an indeterminate scheme in cases in which a defendant's PRV level places him or her somewhere other than in an intermediate sanction cell.[22] But I disagree with respect to cases in which the sentencing scheme sets two possible maximums,[23] which is exactly what occurs in cases involving intermediate sanction cells. In such cases, the sentencing scheme resembles the determinate sentencing schemes discussed in the *Blakely* line of

---

[22] As has been noted, exceptions exist with respect to the crimes of first-degree murder and felony-firearm.

[23] Here the two possible maximums were 15 years (set by MCL 750.84 and MCL 769.10) and 11 months (set by the guidelines).

cases. *Blakely* itself contains a discussion of the difference between indeterminate and determinate schemes:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury. [*Blakely*, 542 US at 308-309 (emphasis in original; citation omitted).]

Once this reasoning is applied to the case at hand, it becomes apparent that Michigan's sentencing scheme is not a traditional indeterminate sentencing scheme. It would be one thing if every second-offense habitual offender convicted of assault with intent to do great bodily harm less than murder faced the same 15-year maximum. Then, no problem would arise if judicial fact-finding resulted in a sentence within the range of zero to 15 years. But that is not the case. Some

second-offense habitual offenders convicted of assault with intent to do great bodily harm less than murder face a maximum sentence of 11 months in jail. They are offenders whose criminal records and admissions, together with the jury's verdict, do not support an OV score.[24] These offenders are entitled to a sentence that is an intermediate sanction. *Id.*

Given that there are two possible maximum sentences for the offense in question, a defendant is entitled to whichever is supported by the defendant's conviction, admissions, and criminal record alone. "[A]nd by reason of the Sixth Amendment the [additional] facts bearing upon that entitlement must be found by a jury." *Id.* at 309. Therefore, if certain other facts are necessary to move the defendant to the higher maximum sentence, they must be proved to the jury beyond a reasonable doubt.

The majority ignores this unusual nature of Michigan's intermediate sanction cells as compared with a traditional indeterminate sentencing scheme. Because intermediate sanction cells set maximum sentences, Michigan's sentencing scheme is distinct from the traditional indeterminate scheme. For Sixth Amendment purposes, it is properly viewed as a mixture of determinate and indeterminate sentencing schemes. This is because, as discussed in *Blakely*, a traditional indeterminate scheme can have only one maximum sentence. *Id.* at

---

[24] These would be the equivalent of *Blakely*'s "burglar who enters a home unarmed . . . ." *Blakely*, 542 US at 309.

40

308-309. The fact that Michigan's indeterminate scheme is different in this way mandates that it be treated differently. The majority fails to honor this distinction.

The majority's argument seems at least partially grounded in the argument raised by the Prosecuting Attorneys Association of Michigan and the Attorney General in their amici curiae brief. They assert that Michigan's sentencing system involves too much judicial discretion to violate the Sixth Amendment. They argue that the amount of discretion involved in sentencing in Michigan makes our system equivalent to traditional indeterminate systems. *Cunningham* specifically rejected this argument:

> The [California Supreme Court's] conclusion that the upper term, and not the middle term, qualifies as the relevant statutory maximum, rested on several considerations. First, the court reasoned that, given the ample discretion afforded trial judges to identify aggravating facts warranting an upper term sentence, the DSL

> "does not represent a legislative effort to shift the proof of particular facts from elements of a crime (to be proved to a jury) to sentencing factors (to be decided by a judge) . . . . Instead, it afforded the sentencing judge the discretion to decide, with the guidance of rules and statutes, whether the facts of the case and the history of the defendant justify the higher sentence. Such a system does not diminish the traditional power of the jury." [*People v Black*, 34 Cal 4th 1238, 1256; 29 Cal Rptr 3d 750; 113 P3d 534 (2005)] (footnote omitted).

> We cautioned in *Blakely*, however, that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

41

*Blakely*, 542 U.S., at 305, and n. 8, 124 S.Ct. 2531. [*Cunningham*, 127 S Ct at 868-869.]

The amount of discretion involved does not matter. What matters is what sentence a defendant would have received solely on the basis of the jury's verdict, his or her prior record, and any admissions he or she made. Whatever sentence a defendant would face as a maximum considering only these factors is the statutory maximum. Any fact-finding that changes this maximum violates the Sixth Amendment, regardless of how much discretion the trial court has in finding those facts. *Id*.

Both *Blakely* and *Booker* make clear that it is irrelevant that the possibility exists for the judge to depart from the statutory maximum sentence in some circumstances. Under *Blakely*, the statutory maximum in this case remains the 11-month intermediate sanction sentence, even though the judge was empowered to increase it after additional fact-finding. *Blakely* succinctly explained the Supreme Court's reasoning on this point:

> The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. Those facts alone were insufficient because, as the Washington Supreme Court has explained, "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense," [*State v*] *Gore*, [143 Wash 2d 288, 315-316; 21 P3d 262 (2001)], which in this case included the elements of second-degree kidnapping and the use of a firearm, see [Wash Rev Code] 9.94A.320, 9.94A.310(3)(b). Had the judge imposed the 90-month sentence solely on the basis of the plea, he would have been reversed. See [Wash Rev Code] 9.94A.210(4). The "maximum sentence" is no more 10 years here than it was 20

years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) or death in *Ring* (because that is what the judge could have imposed upon finding an aggravator). [*Blakely*, 542 US at 304.]

In this case, the statutory maximum was 11 months in jail. Only the judicial fact-finding necessary to score the OV factors allowed the judge to impose the higher maximum sentence. Had the judge sentenced defendant to a maximum of 15 years without scoring the OVs or making additional fact-finding, he would have committed an error requiring reversal. The same rule of law applies as in *Ring*, *Blakely*, *Booker*, and *Cunningham*. Therefore, there is a Sixth Amendment violation in this case, regardless of the fact that the trial judge exercised the discretion that the sentencing guidelines allowed.

## B. THE COURT'S COMPANION DECISION IN *HARPER*

In its decision in *Harper*, the majority relies heavily on the fact that probation is one of the possible intermediate sanctions provided for in MCL 769.31(b). It believes that this fact presents a strong indication that intermediate sanction cell sentences are not really maximum sentences, despite the language of MCL 769.34(4)(a). It is true, as the majority contends, that probation is a matter of grace. MCL 771.4. It may be revoked without a jury trial or proof beyond a reasonable doubt. *United States v Knights*, 534 US 112, 120; 122 S Ct 587; 151 L Ed 2d 497 (2001). But, again, this consideration is simply irrelevant to the question at hand.

43

It is not relevant that a court may revoke probation without violating the Sixth Amendment. What matters is what the court may do after it revokes probation. "If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made." MCL 771.4. This does not require the court to impose the same sentence it could have imposed at the initial sentencing. But after a probation violation, the court still is required to follow the sentencing guidelines. *People v Hendrick*, 472 Mich 555, 560; 697 NW2d 511 (2005). Therefore, the sentencing court is in the same position before and after a probation violation.

A sentencing court is not free to impose any sentence it may wish after a probation violation. Instead, it must comply with the same guidelines as before probation. And just as before probation, it can impose a sentence departing from the sentencing guidelines range only if it makes judicial findings of fact that substantial and compelling reasons exist to depart. The sentencing court may consider the defendant's postprobation conduct when determining if substantial and compelling reasons exist. But the fact that probation was violated does not automatically constitute a substantial and compelling reason. See *id*. at 562-563. The trial court still can depart from the guidelines range only if it makes findings of fact at sentencing justifying the departure. Because of this, a probation violation changes nothing for purposes of the Sixth Amendment analysis.

44

Although the trial court did not impose probation in this case, the facts of this case can be used for demonstration purposes. If only the PRVs had been scored, defendant's minimum sentence range would have been zero to 11 months. MCL 777.21(3)(a); MCL 777.65. Because the cell involved is an intermediate sanction cell, MCL 769.34(4)(a) provides that defendant's maximum sentence would have been 11 months in jail. The sentencing court could have imposed probation rather than a jail term. MCL 769.31(b). If, later, defendant had violated that probation, the court could have revoked the probation and resentenced defendant. But when it did so, it still would have had to comply with the guidelines. *Hendrick*, 472 Mich at 560. Defendant again would have fallen into the zero- to 11-month guidelines range. Again, his maximum sentence would have been 11 months in jail, absent substantial and compelling reasons to exceed the maximum. MCL 769.34(4)(a). Because a maximum sentence is involved, the *Blakely* bright-line rule would apply. "Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham*, 127 S Ct at 868, quoting *Apprendi*, 530 US at 490.

Increasing a defendant's maximum sentence solely on the basis of judicial fact-finding violates the Sixth Amendment just as much after a probation revocation as it does before. A defendant who has violated probation could be sentenced to no more than the original maximum sentence that was based on the

45

jury's verdict. The court has no right to impose a new maximum simply because of the violation. *Cunningham*, 127 S Ct at 868.

In *Harper*, the majority relies heavily on *United States v Ray*[25] to support its argument that *Blakely*'s bright-line rule does not apply to resentencing after probation. *Ray* is highly distinguishable. Unlike the Michigan probation system, the federal system at issue in *Ray* did not mandate resentencing under the federal sentencing guidelines. It imposed a completely new sentence based on the violation.

The federal criminal sentencing system has a process called supervised release. Federal supervised release differs from probation in that it is imposed in addition to imprisonment, rather than instead of it. *Samson v California*, __ US __; 126 S Ct 2193, 2198; 165 L Ed 2d 250 (2006), quoting *United States v Reyes*, 283 F3d 446, 461 (CA 2, 2002). 18 USC 3583 allows a federal court at sentencing to impose a term of supervised release distinct from the time for incarceration set by the federal sentencing guidelines. That same statute authorizes a new maximum sentence that can be imposed after revocation of supervised release. 18 USC 3583(e)(3).

Therefore, a federal court imposing sentence after a revocation of supervised release does not return to the sentencing guidelines to impose a sentence. It turns to the new sentence allowed by 18 USC 3583. Given that the

46

federal system allows supervised release in addition to incarceration, a defendant faces this possible sentence from the beginning. It is not a judicially created increase in the defendant's statutory maximum sentence. It is a sentence created by the Legislature and faced by a defendant from the time that he or she commits the crime.

## C. MICHIGAN'S PROBATION SYSTEM

This differs from Michigan's probation system. Michigan has no statute equivalent to 18 USC 3583. Rather than facing a new sentence set by statute specifically for the probation violation, a Michigan defendant is merely resentenced under the guidelines. *Hendrick*, 472 Mich at 560. Therefore, a Michigan defendant does not face an increased maximum in every case. A Michigan court can move a defendant out of an intermediate sanction cell after probation only by making judicial findings of fact using a preponderance of the evidence standard. Again, because these findings of fact increase the defendant's statutory maximum sentence, they violate *Blakely*'s bright-line rule. *Cunningham*, 127 S Ct at 868.

A Michigan court imposing prison after a probation violation in an intermediate sanction cell case equates to a federal court imposing a sentence exceeding that allowed by 18 USC 3583 for revocation of supervised release. In

_____

(…continued)
[25] 484 F3d 1168 (CA 9, 2007).

47

both cases, the sentencing court is limited to the maximum sentence set by the Legislature. And in both instances, the imposition of a longer sentence violates the Sixth Amendment.

A similar distinction exists between the federal probation system and the Michigan probation system. Unlike a Michigan probationer, a federal probationer who violates the conditions of probation is not resentenced under the federal sentencing guidelines. Rather, the court must refer to a nonbinding policy statement released by the United States Sentencing Commission. *United States v Goffi*, 446 F3d 319, 322 (CA 2, 2006). The Court of Appeals for the Second Circuit explained why *Blakely* does not apply to sentencing after a federal probation violation:

> The statutory scheme thus requires a sentencing court to consider a variety of factors, including the non-binding policy statements applicable to probation violations, in determining an appropriate sentence. *Nowhere, however, does it require a court to sentence within the Guidelines range for the underlying conviction in determining punishment for separate and distinct malfeasance by the defendant—violation of probation. . . . United States v. Pena*, 125 F.3d 285, 287 (5th Cir.1997) ("Because there are no guidelines for sentencing on revocation of probation, and because the district court was not limited to the sentencing range available at the time of the initial sentence, we find no error in the trial court's failure to employ the analysis normally required in departure case[s].") . . . . [*Id*. at 322-323 (emphasis added).]

The exact opposite is true in Michigan. The guidelines continue to apply to a Michigan defendant. *Hendrick*, 472 Mich at 560. The sentencing court is limited to the sentence range available at the time of the initial sentence. And the

48

probation violation is not treated as a separate malfeasance in Michigan. *People v*

*Kaczmarek*, 464 Mich 478, 483-484; 628 NW2d 484 (2001).

These fundamental differences between Michigan's system and the federal

system mandate different results in applying *Blakely*'s bright-line rule. Because

none of the factors relied on by the federal courts exists in Michigan, *Blakely*

continues to apply after probation revocation in Michigan. This completely

undermines the majority's argument that, because of the possibility of probation as

an intermediate sanction, intermediate sanction cells produce a minimum rather

than a maximum sentence.[26]

Further undermining the majority's theory is the fact that, in practice,

Michigan treats intermediate sanction cell sentences as maximum sentences.

When a defendant receives an intermediate sanction that includes only a jail

sentence, he or she faces that sentence and nothing more. A defendant who

receives an 11-month jail sentence is released from supervision at the end of 11

months. The court does not review the case after 11 months to determine if more

---

[26] The majority simply disregards the reasoning of *Goffi and Pena*. And, in doing so, it disregards the distinctions between the two systems. See *Harper*, 479 Mich ___ at n 51. In fact, the two systems differ greatly. In the federal system, a court no longer sentences under the guidelines, probation is viewed as a distinct malfeasance, and the former statutory maximum no longer applies. *Goffi,* 446 F3d at 322-323; *Pena*, 125 F3d at 287. In Michigan, probation is not a separate offense. The guidelines still apply, and the defendant remains subject to the statutory maximum sentence created by MCL 769.34(4)(a). Therefore, unlike the federal system, the Michigan system is still subject to the *Blakely* bright-line rule after a defendant violates probation.

49

incarceration is warranted. Simply, the defendant finishes the sentence and is released from jail. Therefore, an intermediate sanction cell sentence that includes a jail term is treated just like any other maximum sentence.

In *Harper*, the majority further argues that intermediate sanctions must be minimum sentences because a defendant subject to them can be given a sentence of probation with jail. It argues that recognizing that intermediate sanction cell sentences are statutory maximum sentences will limit the effectiveness of imposing such sentences. Although it is true that MCL 769.31(b)(*iv*) allows for intermediate sanction cell sentences that include both probation and jail, the majority's reliance on this point is irrelevant.

The Legislature has determined that a sentence of 12 months in jail is an appropriate statutory maximum sentence for defendants who merit an intermediate sanction.[27] Our constitution vests the Legislature with the ultimate authority to set criminal penalties. Const 1963, art 4, § 45; *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). The Legislature inserted the 12-month limit on jail sentences in MCL 769.34(4)(a). Only the Legislature, not this Court, may increase this limit. Someone who believes that the 12-month cap is insufficient can petition the Legislature to amend the statute. But the Court cannot ignore the

---

[27] "An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less." MCL 769.34(4)(a).

statutory maximum sentence and a defendant's Sixth Amendment rights with regard to it because the Court finds the statutory penalty insufficient.

For example, those who believe that 12 months is insufficient incarceration to punish probation violators could petition the Legislature to change Michigan's probation system to mimic the federal system. The Legislature could follow the lead of *Goffi* and treat a probation violation as a separate malfeasance. It could make probation violation subject, not to the guidelines for the underlying offense, but to independent punishment. See *Goffi*, 446 F3d at 322-323; *Pena*, 125 F3d at 287. If the Legislature effected such a change, it could eliminate the Sixth Amendment violation now lurking in the Michigan system. But, again, this decision must be left to the Legislature.

Ultimately, and most importantly, the majority cannot disregard the Sixth Amendment simply because it is convenient for purposes of the status quo or because it comports with legislative intent. *Blakely* specifically rejected any such approach:

> Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. One can certainly argue that both these values would be better served by leaving justice entirely in the hands of professionals; many nations of the world, particularly those following civil-law traditions, take just that course. There is not one shred of doubt, however, about the Framers' paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by strict division of authority between judge and jury. As *Apprendi* held, every defendant has the *right* to insist that the prosecutor prove to a

51

jury all facts legally essential to the punishment. [*Blakely*, 542 US at 313 (emphasis in original).]

It might be easier to continue the current modus operandi: to punish probation violators by allowing judges to increase their statutory maximum sentence by using findings of fact not supported by the violator's prior record or admissions or a jury's verdict. But the Sixth Amendment does not allow courts to disregard defendants' rights just because making a correction would require the judicial system to undergo change. *Id*.

The majority is also incorrect in relying on its belief that the Legislature intended that probation violators be punished with more than 12 months in jail. Even if the Legislature intended that punishment, it is irrelevant. This fact was made obvious by the decision in *Ring*. The Arizona legislature intended that a sentence of death should be imposed in first-degree murder cases in which aggravating factors existed. *Ring*, 536 US at 592-593. But the Supreme Court found that this intent could not be effectuated in light of the Sixth Amendment. Notwithstanding the Arizona legislature's intent, the judicial fact-finding that increased Ring's maximum sentence to the death penalty violated *Blakely*'s bright-line rule: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id*. at 602.

Moreover, the proper application of the Sixth Amendment to Michigan's intermediate sanction cells need not weaken an intermediate sanction cell sentence

of probation with jail. The system easily could be made to comply with *Blakely*. For example, this Court could amend our court rules to provide for a jury to be impaneled after a court finds a probation violation. If the jury then found beyond a reasonable doubt the facts necessary to move the defendant from an intermediate sanction cell, there would be no Sixth Amendment violation. Therefore, Michigan could both retain its current probation system and protect a defendant's constitutional rights.

In sum, intermediate sanction cells require a sentence that contains all the attributes of, and is in fact, a maximum sentence. This maximum sentence can be increased only by using judicial fact-finding occurring after the jury's verdict. This makes the intermediate sanction cell sentence equivalent to the middle term sentence under California's sentencing scheme. *Cunningham*, 127 S Ct at 868. Both sentences amount to the statutory maximum for *Apprendi* purposes. And a court violates the Sixth Amendment when it sentences a defendant to a sentence longer than this statutory maximum using judicial fact-finding. *Id*. at 870.

## VIII. HARMLESS ERROR

The majority concludes that, even if defendant's sentence violated *Blakely*, the error was harmless. I disagree. While it is true that *Blakely* violations are subject to harmless error review, I believe that the error in this case was not harmless beyond a reasonable doubt.

The Supreme Court concluded that *Blakely* errors are not structural errors requiring automatic reversal. *Washington v Recuenco*, __ US __; 126 S Ct 2546, 2553; 165 L Ed 2d 466 (2006). The Court reasoned that sentencing factors are the equivalent of the elements of the crime, which must be proved to a jury beyond a reasonable doubt. *Id*. at 2552. "'[A]n instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Id*. at 2551, quoting *Neder v United States*, 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (emphasis in original). Given that the failure to present a sentencing factor to a jury is the equivalent of the failure to submit an element of the offense, it cannot be a structural error. *Recuenco*, 126 S Ct at 2552.

The majority reviews this issue under a plain error standard because defendant did not raise a constitutional challenge at sentencing. But the trial court sentenced defendant before the United States Supreme Court decided *Blakely*. Given that *Blakely* was a seminal case and significantly clarified Sixth Amendment rights, I believe that it is excusable for defendant not to have raised the issue before *Blakely* was decided. The appropriate standard of review is whether the omission of an element of the offense is harmless beyond a reasonable doubt. *Neder*, 527 US at 18-19.

> Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same

absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless. [*Id*. at 19.]

This case involves three specific findings of fact. For OV 1, the court found that a weapon, other than a gun or knife, touched the victim. For OV 2, it found that defendant possessed a potentially lethal weapon. And for OV 3, it found that the victim suffered a life threatening or permanent incapacitating injury.

None of these findings is an element of the charged offense of assault with intent to do great bodily harm less than murder. MCL 750.84. Therefore, the jury would have had to make special findings of fact to support an increase in the maximum sentence in this case. Michigan has no procedure for criminal juries to use to make such special findings.[28] See MCR 6.420.[29] This procedural

---

[28] In *Harper*, 479 Mich at ___ n 70, the majority mistakenly states that this Court has left open the question of special verdicts in criminal cases. The majority actually relies on a proposition in Justice Levin's dissenting opinion in *People v Ramsey*, 422 Mich 500; 375 NW2d 297 (1985), to reach this conclusion. In fact, this Court specifically rejected special findings by a jury in a criminal case as long ago as 1874. In *People v Marion*, 29 Mich 31, 40 (1874), the Court rejected the defendant's claim that a statute allowing special findings in civil trials should apply to criminal trials as well:

> The only remaining question relates to the refusal of the court to direct the jury to find specially upon certain particular points of fact. The statute which provides for this practice is found in a chapter relating to the "Trial of issues of fact" (chap. 103, R. S.; ch. 189, *C. L.*, 1871), the general purpose of which is to regulate the trial of civil causes, and many of its provisions are not only inapplicable but repugnant to the rules in criminal cases. There is a separate chapter devoted to "Trials in criminal cases" (ch. 165, R. S.; ch. 261, *Comp. L.*, 1871), covering the same ground for them that is covered by the other chapter in regard to civil cases.

(continued…)

deficiency is significant. The United States Supreme Court has stated that the lack

of a procedure enabling a jury to make a finding suggests that a defendant will

succeed in demonstrating the *Blakely* violation was not harmless. *Recuenco*, 126

---

(…continued)

> Unless an intention to the contrary is apparent, it would create much difficulty and confusion to blend the two sets of regulations, and presumptively the chapters must be confined to their respective purposes.

In fact, the Court stated that allowing special findings in criminal cases would be revolutionary. *Id*. at 41; see also *People v Roat*, 117 Mich 578, 583; 76 NW 91 (1898). Until today, this Court has never questioned the holding of these cases.

The Court of Appeals cases cited by the majority also do not support the majority's contention that special findings are permissible in criminal trials. Both cases mentioned "special verdict forms" merely in passing. And both of these references were directed at forms that would allow the court to distinguish multiple charges for the same offense. Neither case dealt with special findings made by a jury beyond a general verdict for the individual offense. *People v Kiczenski*, 118 Mich App 341, 345; 324 NW2d 614 (1982); *People v Matuszak*, 263 Mich App 42, 51; 687 NW2d 342 (2004). Neither case can fairly be characterized as creating the "revolution" cautioned against in *Marion* and *Roat*. And, contrary to the majority's contention, this area of law appears well settled.

[29] In *Harper*, the majority also argues that special findings are permissible in criminal trials because the court rules allow for the application of the rules of civil procedure to criminal proceedings in certain circumstances. First, this is essentially the same argument that this Court rejected in *Marion*, 29 Mich at 40. Second, MCR 6.001(D)(2) specifically limits the application of the rules of civil procedure "when it clearly appears that they apply to civil actions only[.]" Given that this Court rejected the availability of special findings to criminal trials, it is clear that MCR 2.514 applies only to civil actions. Third, MCR 6.001(D)(3) indicates that the civil rules do not apply when a "court rule provides a like or different procedure." MCR 6.420 provides a similar but different standard for the returning of jury verdicts in criminal cases. Hence, this standard, which does not include special findings, takes precedence over the procedures allowed in MCR 2.514.

56

S Ct at 2550. In this case, the lack of a procedure renders more difficult the prosecution's burden of showing that the error was harmless.[30]

Both OV 1 and OV 2 deal with possession of a weapon. The majority argues that the evidence that defendant possessed a weapon was overwhelming and uncontested. But this argument is unfair. At trial, defendant had no opportunity or reason to contest the evidence regarding the weapon. It was not an element of the offense or relevant to defendant's defense strategy. For defendant to have objected to the existence of a weapon would have been distracting, irrelevant, and potentially confusing to the jury. Given that there was no reason or opportunity to present evidence on this point, defendant can hardly be faulted for not doing so.

Moreover, the evidence regarding the use of a weapon was in fact contested. One key prosecution witness, Gregory Thompson, testified that defendant did not use a weapon but beat the complainant with his fists.[31] And no

---

[30] The majority accuses me of effectively finding all *Blakely* errors "harmful per se." *Ante* at 23 n 17. This is inaccurate. I acknowledge that the *Blakely* error in *Recuenco* was not harmful per se. But when I apply the words of the United States Supreme Court, it is not clear to me that *Blakely* errors in Michigan may be harmless beyond a reasonable doubt. This is because, as the Supreme Court advises, the lack of a procedure will increase the difficulty of the prosecution's burden to prove any error harmless beyond a reasonable doubt. And Michigan lacks a procedure. If the jury has no means of making the finding, how can a reviewing court presume that the jury would have made that finding regardless of the prohibition against it?

[31] I have not mischaracterized Thompson's testimony, as the majority claims. During initial questioning, Thompson stated that defendant indicated that
(continued…)

57

weapon was ever found at the scene of the offense. This evidence contradicts the conclusion that a weapon was involved. Because of this, the prosecution cannot demonstrate beyond a reasonable doubt that a jury would have made the findings of fact necessary to score OV 1 and OV 2.

OV 3 deals with the injury suffered by the complainant. To warrant 25 points under OV 3, there must be a "[l]ife threatening or permanent incapacitating injury . . . ." MCL 777.33(1)(c). While there was evidence that the complainant's injuries were significant, there was no specific evidence that they were life threatening or permanently incapacitating. This lack of evidence precludes a conclusion that the error was harmless.

No medical expert testified at trial. And defendant's medical records were not submitted to the jury. Again, this is because neither defendant nor the prosecution had any reason to argue these issues at trial. Without some medical evidence of permanent incapacitation or that the injuries were life threatening, a jury could not have made such a determination beyond a reasonable doubt.[32]

---

(…continued)
defendant beat the complainant with his fists. During cross-examination, Thompson stated that it was possible that defendant used a weapon.

[32] An argument can be made that the evidence presented at trial supports a finding that the complainant suffered bodily injury requiring medical treatment. This evidence, it could be argued, would justify 10 points under OV 3. MCL 777.33(1)(d). But given that the prosecution never made this argument on appeal, it is not properly before the Court.

(continued…)

Hence, the prosecution cannot carry its burden to prove that the *Blakely* error occurring in this case was harmless beyond a reasonable doubt. *Neder*, 527 US at 18-19.[33]

There is insufficient evidence that the jury would have made the findings of fact necessary to score the OVs. This is especially true in light of the fact that there are no procedures in place for a jury to make special findings in a criminal trial in Michigan. Therefore, the prosecution did not carry its burden. *Id.*; *Recuenco*, 126 S Ct at 2550. Defendant must be resentenced in a manner consistent with the Sixth Amendment.

---

(…continued)

Even if the prosecution had made this argument, however, it would not have rendered the error in defendant's sentence harmless beyond a reasonable doubt. A score of 10 points would have given defendant a PRV score of 2 and an OV score of 10. This would have placed him in the B-II cell of the class D grid. MCL 777.65. The B-II cell sets a range of zero to 13 months for a second-offense habitual offender. MCL 777.65; MCL 777.21(3)(a). This is still an intermediate sanction cell. Defendant's statutory maximum sentence would have increased from 11 months to 12 months in jail. MCL 769.34(4)(a). Hence, imposition of a 15-year maximum sentence would still have violated *Blakely*'s bright-line rule.

[33] The majority summarily concludes that no medical evidence was necessary in this case. Its conclusion is contrary to the statute, which requires proof of "[l]ife threatening or permanent incapacitating injury . . . ." MCL 777.33(1)(c). The majority also inappropriately shifts to defendant the burden to disprove the nature of the injuries. This is inconsistent with harmless error review, which is required here. Moreover, it is inconsistent with the very nature of criminal trials, which mandates that the prosecution, not the defense, prove the elements of the crime charged beyond a reasonable doubt.

## IX. CONCLUSION

Although it concedes that *Cunningham* presented nothing new and that it must follow the precedent of the *Blakely* line of cases, the majority reaffirms its previous decision in this case. In essence, the majority states today that the United States Supreme Court did not comprehend the majority's previous decision and misunderstood Michigan law.

The maximum sentence resulting from an intermediate sanction cell is a true statutory maximum for purposes of *Cunningham.* A court cannot increase this maximum sentence by scoring the OVs without violating the Sixth Amendment. Finally, the sentencing error in this case was not harmless, because the OVs were scored using facts that were not supported by overwhelming evidence.

I take the Supreme Court's order for what it is: an indication that there is a Sixth Amendment problem with Michigan's sentencing guidelines. This case illustrates that a grave constitutional violation occurs in this state when *Blakely* is correctly applied. Specifically, the judicial fact-finding that moved defendant from an intermediate sanction cell to a straddle cell violated his Sixth Amendment right to trial by jury.

Defendant's sentence should be vacated, and the case should be remanded to the trial court for resentencing. The Michigan sentencing guidelines statutes should be held unconstitutional as applied in this case.[34]

Marilyn Kelly

---

[34] Because this is a remand from the United States Supreme Court, I believe that it is not necessary to address here the cure for the constitutional violation. I continue to believe what I articulated in my prior dissenting opinion. Given that a large portion of Michigan's sentencing guidelines involve intermediate sanction cells that intertwine with the rest of the guidelines, the unconstitutional sections cannot be severed. Therefore, the entire guidelines must be found unconstitutional when applied as they were in this case. In future cases, Michigan trial judges should implement a bifurcated hearing system. And the prosecution should be required, after a guilty verdict, to submit the facts not admitted but necessary for scoring the OVs to a jury for resolution beyond a reasonable doubt. For a more thorough discussion of this issue, I refer the reader to my previous dissent. *McCuller*, 475 Mich at 208-213 (Kelly, J., dissenting).

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                          No. 128161

RAYMOND A. MCCULLER,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I agree with the result advocated by Justice Kelly in her dissent because it comports with my position in this case the first time it was before this Court. See *People v McCuller*, 475 Mich 176, 214; 715 NW2d 798 (2006) (Cavanagh, J., dissenting). When dealing with intermediate sanctions, I believe that the requirements set forth by the United States Supreme Court in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and further applied in *Cunningham v California*, ___ US ___; 127 S Ct 856; 166 L Ed 2d 856 (2007), must be followed. Thus, the trial court improperly engaged in judicial fact-finding, and this case should be remanded for resentencing.

                                    Michael F. Cavanagh